**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| PROBATTER SPORTS, LLC,<br><br>       Plaintiff,<br><br>vs.<br><br>JOYNER TECHNOLOGIES, INC. and THE UNIVERSITY OF NORTHERN IOWA,<br><br>       Defendants.<br>_____<br><br>JOYNER TECHNOLOGIES, INC.,<br><br>       Counterclaim-Plaintiff,<br>vs.<br><br>PROBATTER SPORTS, LLC,<br><br>       Counterclaim-Defendant. | No. 05-CV-2045-LRR<br><br><br><br>**ORDER** |

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*  *THE MERITS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
      *A.*    *Choice of Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
      *B.*    *Scope of the Protective Order* . . . . . . . . . . . . . . . . . . . . . . . . . *3*
            *1.*    *Rule 26(c)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

          *2.    Arguments of the Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
          *3.    Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*V.    DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

## *I. INTRODUCTION*

Before the court is the Motion for Protective Order ("Motion") (docket no. 76), filed by Plaintiff/Counterclaim-Defendant ProBatter Sports, LLC ("ProBatter").

## *II. RELEVANT PRIOR PROCEEDINGS*

On August 25, 2006, ProBatter filed the Motion. On September 1, 2006, Defendant/Counterclaim-Plaintiff Joyner Technologies, Inc. ("Joyner") filed a Resistance. On September 11, 2006, ProBatter filed a Reply.

## *III. JURISDICTION*

The court has original jurisdiction of civil actions "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). It also has jurisdiction over related claims for unfair competition. *Id.* § 1338(b). ProBatter's Complaint and Joyner's Counterclaim raise various claims of patent infringement, in violation of 35 U.S.C. § 271, and common law unfair competition. Therefore, the court has subject-matter jurisdiction pursuant to § 1338(a) and (b).

## *IV. THE MERITS*

ProBatter and Joyner, two companies that sell baseball pitching machine products, are at an impasse in discovery. Although the parties agree that a protective order should govern the disclosure of evidence, they disagree on its scope. The fighting issue is whether Ms. Susan Schlesinger, an associate at Grimes & Battersby, LLP, who is admitted *pro hac vice* in this matter, should be permitted to have access to documents containing Joyner's trade secrets.

### A. Choice of Law

Federal Circuit Court of Appeals case law is binding only on those issues that are unique to patent law. *Bowling v. Hasbro, Inc.*, 403 F.3d 1373, 1375 (Fed. Cir. 2005). The law of the regional circuit court of appeals applies to other issues, including "when the precise issue involves an interpretation of the Federal Rules of Civil Procedure . . . ." *Biodex Corp. v. Loredan Biomed., Inc.*, 946 F.2d 850, 857-58 (Fed. Cir. 1991). Discovery issues are not unique to patent law. *See Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1416 (Fed. Cir. 1989) (applying Seventh Circuit Court of Appeals case law to Rule 37(b) discovery sanction issue). Likewise, "[q]uestions dealing with the provisions of [a code of professional responsibility] involve procedural matters which are not unique to patent cases." *Picker Int'l, Inc. v. Varian Assocs., Inc.*, 869 F.2d 578, 580 (Fed. Cir. 1989) (citing *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 829 (Fed. Cir. 1988)); *see also In re Riles*, No. 620, 2000 WL 1062086, at **1 (Fed. Cir. July 20, 2000) ("The interpretation of state disciplinary rules is a procedural matter that is not unique to patent cases."). Accordingly, the law of the Eighth Circuit Court of Appeals is binding on the court in this Motion.

### B. Scope of the Protective Order

#### 1. Rule 26(c)

Because the Federal Rules of Civil Procedure contemplate liberal pretrial discovery, *see* Fed. R. Civ. P. 26(b)(1), pretrial discovery "has a significant potential for abuse." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). For this reason, "it is necessary for the trial court to have the authority to issue protective orders . . . ." *Id.*

Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders. In pertinent part, Rule 26 provides:

> **(c) Protective Orders.** Upon motion by a party or by the

> person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> . . . .
>
>> **(7)** that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way . . . .

Fed. R. Civ. P. 26(c)(7) (emphasis in original). The court has "substantial latitude to fashion protective orders." *Seattle Times*, 467 U.S. at 36; *see also Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1060 (8th Cir. 2005) (stating that trial courts retain broad discretion in ruling on discovery matters).

### *2. Arguments of the Parties*

ProBatter urges the court to enter a protective order that permits Ms. Schlesinger access to Joyner's trade secrets. Exhibit A (docket no. 76-3) is ProBatter's preferred protective order.

Exhibit A permits a party to designate certain Rule 26(c)(7) trade secrets as "Confidential—Attorneys' Eyes Only."[1] Exhibit A, ¶ 2(b). In pertinent part, Exhibit A provides:

> [A]ccess to materials designated . . . as "Confidential—Attorneys' Eyes Only" shall exclude access of

---

[1] "Confidential—Attorneys' Eyes Only" material includes but is not limited to "financial information and marketing or scientific information and know-how." Exhibit A, ¶ 2(b).

4

> such materials by Mr. Charles Grimes and Mr. Gregory Battersby, the named partners in the law firm of Grimes & Battersby, LLP. In addition, Grimes & Battersby, LLP [will] warrant that access by Mr. James Coplit to materials designated as . . . "Confidential—Attorneys' Eyes Only" will preclude Mr. Coplit from the prosecution of any ProBatter patents related to video and/or pitching machine technology during the pendency of this lawsuit and for one year following disposition of this lawsuit.

*Id.* Exhibit A does not forbid Ms. Susan Schlesinger, an associate of Messrs. Grimes and Battersby, from accessing "Confidential—Attorneys' Eyes Only" material.

ProBatter does not deny that it would be unfair to Joyner to permit Messrs. Grimes and Battersby to view Joyner's trade secrets. It is uncontested that Messrs. Grimes and Battersby are members of ProBatter's Board of Directors. Mr. Battersby is ProBatter's CEO. Collectively, the two men own more than 50% of ProBatter's shares. Messrs. Grimes and Battersby are the inventors of the patents at issue in this case and have assigned the patents to ProBatter. Messrs. Grimes and Battersby clearly are involved in the competitive decisionmaking of ProBatter.

ProBatter contends that, since Ms. Schlesinger is not involved in any competitive decisionmaking, the court should permit her access to Joyner's trade secrets. Citing *U.S. Steel Corporation v. United States*, 730 F.2d 1465 (Fed. Cir. 1984),[2] ProBatter likens the attorneys at Grimes & Battersby, LLP, to in-house counsel for ProBatter and argues that

---

[2] *U.S. Steel* is "the leading authority on protective orders distinguishing between outside and in-house counsel." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *see Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, No. 03-CV-165, 2003 U.S. Dist. LEXIS 6851, *14 (N.D.N.Y. Apr. 24, 2003) (same); *see also Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991) (applying *U.S. Steel* analysis).

5

"[a]ccess should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented." *U.S. Steel*, 730 F.2d at 1469. ProBatter opines that it would suffer undue prejudice if Ms. Schlesinger cannot access Joyner's trade secrets. ProBatter points out that the attorneys of Grimes & Battersby, LLP, have been listed as "of counsel" in this action since the Complaint was filed and "[n]o filing in this action has been undertaken without [their] demonstrable input and drafting . . . ." In its Motion, ProBatter offers to put in place a screening device, a so-called "Chinese Wall," between Ms. Schlesinger and Messrs. Grimes and Battersby. The precise contours of the proposed screening device are unknown. They are not set forth in ProBatter's proposed protective order.

In its Resistance, Joyner contends *U.S. Steel* is distinguishable because, in this case, Messrs. Grimes and Battersby are essentially "the real parties in interest." Joyner points out that Messrs. Grimes and Battersby own a controlling interest in ProBatter, Messrs. Grimes and Battersby invented the machines in dispute and ProBatter holds the patents on those machines. Joyner contends that a "Chinese Wall" would prove ineffective if Ms. Schlesinger is permitted access to Confidential—Attorneys' Eyes Only material. Joyner opines that "confidential materials will inevitably be accessible by Messrs. Grimes and Battersby." Joyner offers its own proposed protective order, Exhibit B (docket no. 76-4). In relevant part, Exhibit B states that "no information designated [Confidential—Attorneys' Eyes Only] by any adverse party will be disclosed to any attorney or employee of Grimes & Battersby, LLP." Exhibit B, ¶ 2.3.

### 3. *Analysis*

The parties do not cite any cases precisely on point. *U.S. Steel* is instructive, but distinguishable.

In *U.S. Steel*, the Federal Circuit Court of Appeals reviewed a decision of the Court

of International Trade ("CIT") to deny a party's in-house counsel access to certain confidential information but to grant access to the same information to retained counsel. *U.S. Steel*, 730 F.2d at 1466-68 (interpreting 19 U.S.C. § 1516a(b)(2)(B)).  The CIT denied access to in-house counsel for the sole reason that counsel was in-house, on the theory that there was "'a greater likelihood of inadvertent disclosure by lawyers who are employees committed to remain in the environment of a single company.'" *Id.* at 1467-68 (quoting *U.S. Steel Corp. v. United States*, 569 F. Supp. 870, 872 (Ct. Int'l Trade 1983)).

The Federal Circuit Court of Appeals reversed.  The Court stated that "[d]enial or grant of access . . . . cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." *Id.* at 1468.  Instead, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." *Id.*  Because in-house counsel was not involved in "competitive decisionmaking"[3] and the litigation before it was "extremely complex and at an advanced stage," the Court held that forcing the party to rely on newly retained counsel would create "an extreme and unnecessary hardship." *Id.*

Unlike *U.S. Steel*, in the case at bar, a party seeks to have *outside* counsel view confidential material.  Grimes & Battersby, LLP, not ProBatter, directly employs Ms. Schlesinger.  Her mere status as outside counsel, however, is not dispositive; the court should consider the factual circumstances surrounding her activities, association and

---

[3] Involvement in "competitive decisionmaking" is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468 n.3.

7

relationship with ProBatter. *Id*.; *cf. Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, No. 03-CV-165, 2003 U.S. Dist. LEXIS 6851, *15-16 (N.D.N.Y. Apr. 24, 2003) ("Whether Mr. Heath is Hanford's in-house counsel is of no consequence. [H]is positions, both as Hanford's Corporate Secretary and as a member of Hanford's Board of Directors, create a serious risk of the inadvertent disclosure of confidential documents and information."). In other words, the court must "examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (emphasis in original).

Under the unique circumstances of this case, Ms. Schlesinger is closely associated with the individuals who do the competitive decisionmaking at ProBatter in spite of her formal status as outside counsel. Her partners are the owners of the ProBatter and the inventors of the technology. ProBatter is the assignee of the patents in dispute. Grimes & Battersby, LLP, is in essence the "in-house" law firm of ProBatter, and Ms. Schlesinger is a member of that firm.

ProBatter stresses that the court must examine each counsel's role individually, *U.S. Steel*, 730 F.2d at 1468, and points out that Joyner does not allege that Ms. Schlesinger is personally involved in the competitive decisionmaking at ProBatter. Unlike *U.S. Steel*, however, here, the party seeks to have an attorney view confidential material when that attorney's law partners are involved in competitive decisionmaking. Ms. Schlesinger is thus closely associated with the competitive decisionmaking at ProBatter. There is no indication that, in *U.S. Steel*, any in-house counsel was involved in competitive decisionmaking.

Because Ms. Schlesinger's law partners are involved in competitive decisionmaking, the risk of inadvertent disclosure is heightened under the facts and circumstances of this case. *Cf. Norbrook Labs.*, 2003 U.S. Dist. LEXIS 6851, at *15-16 ("While Mr. Heath

may not directly participate in competitive decisionmaking . . . he sits in the same room as those who are involved in competitive decisionmaking . . . ."). Were the court to permit Ms. Schlesinger to view or retain Joyner's trade secrets, there would be a risk of inadvertent disclosure to Joyner. It is not denied that Grimes & Battersby is a relatively small law firm. Presumably, Ms. Schlesinger enjoys a very close working relationship with Messrs. Grimes and Battersby.

Ms. Schlesinger is appearing in this case *pro hac vice* pursuant to Local Rule 83.2. She has agreed to "submit to and comply with all provisions and requirements of the Iowa Rules of Professional Conduct, or any successor code adopted by the Iowa Supreme Court." LR 83.2(d)(3). The fact that Ms. Schlesinger's partners are disqualified from viewing Joyner's trade secrets is thus imputed to her. *See Doe ex rel. Doe v. Perry Cmty. Sch. Dist.*, 650 N.W.2d 594, 598 (Iowa 2002) (stating the general rule that disqualification is imputed from the personally prohibited lawyer to all members of the firm); *see also* Iowa Rule Prof'l Conduct 32:1.10 ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 32:1.7 or 32:1.9.").

The court recognizes that, in some instances, a screening device may avoid imputation of disqualification from one lawyer to the entire firm. *See Perry Cmty Sch. Dist.*, 650 N.W.2d at 597 n.1 & 598 (recognizing that other jurisdictions and the Iowa Board of Professional Ethics and Conduct have approved the used of "Chinese Walls" to prevent disqualification of the entire firm in various circumstances). "Certain procedures must be followed to constitute a sufficient screening mechanism to prevent the potential disqualification of the firm." *Id.* at 600. The court must consider "the nature and extent of the screening mechanism to determine whether it is adequate to prevent dissemination of confidential information . . . ." *Id.* If the litigation involves "sensitive and confidential

matters," a screening device may not be sufficient to prevent disqualification. *Id.*

The precise details of ProBatter's proposed screening device are unknown to the court. The court cannot rule that ProBatter's mere offer to put in a "Chinese Wall" of unknown scope and quality would constitute a sufficient screening mechanism. Even if Exhibit A detailed such matters and contemplated a complete screen between Ms. Schlesinger and Messrs. Grimes and Battersby, the court would find that, under these circumstances, it would be insufficient. Joyner's trade secrets are, by definition, "sensitive and confidential matters."

> It cannot be disputed that the most critical of all protective measures is that which prevents the disclosure of competitively sensitive information . . . . Should such information be disclosed, all other protective measures would be virtually meaningless. If [one party] is able to secure competitively sensitive information of the [other], either intentionally or inadvertently, the ability of the [other party] to compete effectively . . . would be seriously impaired.

*FTC v. Exxon Corp.*, 636 F.2d 1336, 1349-50 (D.C. Cir. 1980).

Even if the court were to find that the competitive decisionmaking responsibilities of Messrs. Grimes and Battersby should not be imputed to Ms. Schlesinger or that a screening device could forestall such imputation, the court would decline to afford Ms. Schlesinger access to Joyner's trade secrets. Critically, ProBatter has not shown how it would suffer undue prejudice if Ms. Schlesinger is not permitted to access to Joyner's trade secrets. *See U.S. Steel*, 730 F.2d at 1468 (finding that not permitting in-house counsel to view confidential information would create "an extreme and unnecessary hardship").

Unlike *U.S. Steel*, ProBatter has already retained an outside law firm, Simmons, Perrine, Albright & Ellwood, PLC ("Simmons Perrine"), to represent it in this matter. Mr. Stephen J. Holtman, a partner of Simmons Perrine, signed the Complaint and has

10

repeatedly appeared as lead counsel for ProBatter in this matter. Mr. Holtman is known to the court as an experienced patent lawyer, and he is presumably fully familiar with the case. Because ProBatter has already hired Simmons Perrine, ProBatter will not have to hire additional counsel if the court enters a protective order denying Ms. Schlesinger access to the trade secrets. Instead, Mr. Holtman will continue to lead ProBatter's efforts in this litigation.

ProBatter has not established any reason why Ms. Schlesinger in particular must have access to Joyner's trade secrets. *See Highway Equip. Co. v. Cives Corp.*, No. 04-CV-147-LRR, 2006 U.S. Dist. LEXIS 31179, *12-13 (N.D. Iowa May 15, 2006) ("Cives has asserted only that its in-house coun[sel] has been 'completely involved in all aspects of this controversy,' and would therefore be inhibited in its ability to litigate . . . if access to the designated materials is denied to in-house counsel. The court finds that Cives has not established that its in-house counsel needs access to the designated information."). Indeed, Ms. Schlesinger was not even admitted to practice *pro hac vice* in this matter until approximately two weeks ago. ProBatter has not indicated that Mr. Holtman or his fellow members of Simmons Perrine are "somehow less competent to review, consider and utilize the designated information than [Ms. Schlesinger] counsel would be." *Id.* at *13 (citing *Hirsh, Inc. v. United States*, 657 F. Supp. 1297, 1305 (Ct. Int'l Trade 1987)). In sum, ProBatter has not shown that it would suffer undue prejudice if Ms. Schlesinger is not permitted access to Joyner's trade secrets. *See Norbrook Labs.*, 2003 U.S. Dist. LEXIS 6851, at *17 (distinguishing *U.S. Steel* because, in *U.S. Steel*, "the exclusion of counsel would have forced the party to retain new counsel) (citing *U.S. Steel*, 730 F.2d at 1468)); *see also Highway Equip.*, 2006 U.S. Dist. LEXIS 31179, at *12-13 (similar).

*U.S. Steel* is also distinguishable because the instant litigation is in its infancy, not at an "advanced stage." *See U.S. Steel*, 730 F.2d at 1468 (finding that not permitting in-

house counsel to view confidential information was erroneous in part because litigation was at an "advanced stage"). Discovery has not commenced. It is not an "extremely complex" case. *See id.* (finding that not permitting in-house counsel to view confidential information was erroneous in part because litigation was "extremely complex"). By its own admission, ProBatter does not anticipate that there will be many trade secrets exposed during the litigation.

Considering all the facts and circumstances of the case, the court finds that the danger of inadvertent disclosure posed by permitting Ms. Schlesinger to access Joyner's trade secrets is not outweighed by any prejudice ProBatter would suffer if Ms. Schlesinger were not permitted to access such information. The court stresses that it has no reason to question Ms. Schlesigner's integrity. *See Perry Cmty Sch. Dist.*, 650 N.W.2d at 601 (presuming that "lawyers will act withing the confines of our rules of ethics and professional responsibility"). The problem is that "[i]nadvertence, like the thief-in-the-night, is no respecter of its victims." *U.S. Steel*, 730 F.2d at 1468.

Accordingly, the court shall grant in part and deny in part the Motion. The court shall grant ProBatter's request for a protective order. The court shall adopt Exhibit B, Joyner's proposed protective order.

## V. DISPOSITION

**IT IS THEREFORE ORDERED**:

(1) ProBatter's Motion for Protective Order (docket no. 76) is **DENIED IN PART AND GRANTED IN PART**; and

(2) Exhibit B, Joyner's proposed protective order, is **ADOPTED**. Exhibit B shall govern discovery in this matter, and the court shall sign and file it separately.

**IT IS SO ORDERED.**

**DATED** this 11th day of October, 2006.

                                                LINDA R. READE
                                                JUDGE, U. S. DISTRICT COURT
                                                NORTHERN DISTRICT OF IOWA