# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| PROBATTER SPORTS, LLC, | Case No.: 05-CV-2045 |
| Plaintiff, | |
| v. | |
| JOYNER TECHNOLOGIES, INC., and | |
| UNIVERSITY OF NORTHERN IOWA<br>Defendants. | |

**PROBATTER SPORTS, LLC'S BRIEF IN RESISTANCE TO JOYNER TECHNOLOGIES INC.'S MOTION TO ENJOIN PROBATTER'S RECENT SUITS AGAINST JOYNER'S CUSTOMERS**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT……………………………………………………2

II. LEGAL ARGUMENTS………………………………………………………….8

    A. PROBATTER SHOULD NOT BE ENJOINED FROM PURSUING ITS RIGHTS TO PROTECT ITS PATENT AGAINST JOYNER'S CUSTOMERS……………………………………………..…..8

    B. IF THE COURT FINDS PROBATTER SHOULD BE ENJOINED, JOYNER SHOULD BE REQUIRED TO POST BONDS FOR ALL SUITS WHICH PROBATTER HAS FILED……………………………………………….....11

    III. CONCLUSION…………………………………………………………….12

## I. PRELIMINARY STATEMENT

ProBatter Sports, LLC respectfully submits this Brief in Resistance to Joyner Technologies Inc.'s Motion to Enjoin ProBatter's Recent Suits Against Joyner's Customers.

The Eighth Circuit Court of Appeals long ago established the legal precedence that is controlling in this situation:

> Established principles of equity jurisprudence are: (1) that one may not be enjoined from doing lawful acts to protect and enforce his rights of property or of person, unless his acts to that effect are clearly shown to be done unnecessarily, not for the purpose of preserving and enforcing his rights, but maliciously to vex, annoy, and injure another; and (2) that where the injury to the applicant if the preliminary injunction is refused will probably be greater than the injury to the opponent if it is granted it should be issued, while if the contrary is the probable result the application for it should be denied. *Kryptok Co. v. Stead Lens Co.*, 190 F. 767, 769 (8th Cir. 1911) (citing *Russell V. Farley*, 105 U.S. 433, 438 (1882).

It is self-evident that the first principle of equity jurisprudence favors ProBatter. In its capacity as a patent holder, ProBatter has the right to protect and enforce its patent rights against those who **make, use or sell** products which infringe its patents. *See* 35 U.S.C. §271. ProBatter sued Joyner for **manufacturing and selling** the infringing ALL STAR PRO 5000 video display system (currently referred to as the ALL STAR ACE 5000 - both collectively hereinafter referred to as the "ALL STAR PRO 5000"). Now, ProBatter has initiated lawsuits against individuals and entities that are **using** the infringing ALL STAR PRO 5000. The actions which Joyner seeks to enjoin were not commenced by ProBatter to harass Joyner's customers, as has been baldly alleged, but rather, to protect the patent rights which ProBatter was granted by the United States Patent & Trademark Office when it was granted patent protection for its inventions. The fact that such individuals and entities that are using the infringing products may be Joyner's customers is irrelevant.

2

Case 6:05-cv-02045-LRR    Document 101    Filed 10/30/06    Page 2 of 14

It is also readily apparent from an examination of the underlying facts that there are a number of reasons why the second principle of equity jurisprudence also favors ProBatter.

First, the individuals and entities against whom ProBatter has filed the lawsuits are not parties in the Iowa lawsuit, they have no connections whatsoever to Iowa and they are outside of this Court's jurisdiction. As such, assuming ProBatter prevails in the present action against Joyner, this Court would be without power to enjoin them from **using** the infringing products.

Second, ProBatter will be irreparably harmed if it is not allowed to continue with the lawsuits, inasmuch as such individuals and entities will be able to continue using the infringing products and continue reaping profits – profits which ProBatter may or may not ultimately be able to recover from them. The parties that have been sued are all batting cages, which are notoriously under funded. They will likely go out of business when later confronted with liability for patent infringement. Under those circumstances, ProBatter would be left with a right, but no remedy.

Third, "conspicuously absent" from Joyner's motion is how it proposes ProBatter will be able to recover from the harm incurred by Joyner's customers' infringing conduct if ProBatter is enjoined from pursuing such customer suits. Joyner points out the fact that there is a six year statute of limitations for patent matters, and that ProBatter will have time to seek damages from Joyner's customers after resolution of this case. However, a six year statute of limitations is of no use to ProBatter if Joyner's customers are allowed to continue to infringe ProBatter's patents in the meantime and then go out of business when they are later found to have infringed ProBatter's patents.

Fourth, if ProBatter is to look to Joyner to satisfy these damages, ProBatter's fate is in the hands of a business which Joyner has already, by its own admission, characterized as a "family

[owned] business." (Joyner Technologies Inc.'s Brief in Support of Motion to Enjoin ProBatter's Recent Suits Against Joyner's Customers (Joyner's Brief, pg. 3)). In fact, Joyner previously disclosed the fact that another company, Sports Tutor, Inc., was helping Joyner fund its litigation costs in this action. *See* Defendant Joyner's Amended Statement of Interest, Docket # 24. Therefore, there is little doubt that assuming ProBatter prevails in this action, Joyner will no longer be in a position to satisfy any judgment against it. Thus, these third party actions may be the only recourse that ProBatter may ever have to be compensated for these infringing acts.

Fifth, Joyner has alleged, though not proven either by affidavit or by presenting a copy of an indemnification agreement, that it has an indemnity obligation to its customers. To the extent that Joyner actually does not have such indemnity obligation to its customers, Joyner has no right to seek to enjoin ProBatter from suits against its customers. To the extent that Joyner indeed does have an indemnity obligation to its customers, Joyner would need to be financially responsible to such customers. As discussed above, Joyner has not shown that it will be responsible for the payment of damages it is found liable for in this action, let alone that it has the capability to assume the responsibility of the payment of damages that its customers might be found liable for. Accordingly, ProBatter will be unable to recover for all the damages suffered as a result of Joyner's customers infringing conduct if ProBatter does not proceed against those customers directly without delay.

Sixth, when courts have granted injunctions in these types of cases, as herein below discussed, they have often required the applicant for injunctive relief to demonstrate financial capability to satisfy any ultimate judgment and in many cases required the applicant to post a bond. Ironically, not only does Joyner not put forth evidence of financial capability and/or offer to post a bond, quite to the contrary, Joyner asks this Court to grant him injunctive relief

precisely for the very reasons other courts have found no such relief should be granted, to wit, that he is a "family [owned] business" that has inadequate financial resources. (Joyner's Brief, pg. 3)

Seventh, Joyner will suffer little or no harm if ProBatter proceeds with the lawsuits. Joyner was already involved in this lawsuit when it chose to proceed with sales of infringing products. Joyner has already profited from such sales. Joyner was well aware of ProBatter's right under 35 U.S.C. §271 to pursue those who use the infringing product and of ProBatter's intention to exercise such right, in view ProBatter's claims against Defendant University of Northern Iowa in this action. Despite all of that, Joyner chose to proceed with such sales. Joyner should not now be heard to argue that it will be harmed if ProBatter is not enjoined.

Eighth, ProBatter takes strong exception to the statement by Joyner that ProBatter let this case "languish for month after month" ("Joyner's Brief", pg. 1). That statement is a gross misrepresentation of the facts. ProBatter spent the better part of the spring and early summer in what it thought were good faith settlement negotiations with Joyner. Ultimately, ProBatter brought the other lawsuits after settlement efforts failed.

Ninth, and most problematic, it is now clear that Joyner was using the settlement negotiations as a sham to buy time to establish its infringing product in the marketplace. This is evidenced by the fact that the customers of Joyner against whom ProBatter has recently filed the lawsuits all became customers of Joyner while it was allegedly negotiating "in good faith" with ProBatter. This is substantiated by Joyner's own admission, "Joyner's sales to the customers were all recent." (Joyner's Brief, pg. 2).[1]

---

[1] ProBatter notes that if Joyner was interested in pursuing this case rather than increasing its infringing product in the marketplace, Joyner could have served discovery on ProBatter before September 15 and 22, 2006 respectively. Moreover, without a hint of irony, Joyner makes these claims and fails to acknowledge that Joyner made a first request for an extension of time to respond to ProBatter's discovery requests which, out of professional

5

Tenth, Joyner's assertion that somehow the filing of the lawsuits against Joyner's customers helps in terms of "an end run around" the Protective Order of this Court is ludicrous. As an initial matter, Joyner is not a defendant in the other lawsuits. Further, a Protective Order in one case has no bearing on the issues in another case. Finally, arguing that Stephen J. Holtman is somehow "conspicuously absent" from the lawsuit filed in New York is baseless. (Joyner's Brief, pg. 2). Attorney Holtman, as local counsel in Iowa, has no reason to appear on behalf of ProBatter in a district court to which he is not admitted.

Eleventh, and by no means least, it should be appreciated that ProBatter has invested many years and millions of dollars into not only developing the subject products which are protected by U.S. (and foreign) patents, but in developing the marketplace for these products. ProBatter created a marketplace that did not exist before ProBatter's efforts. Joyner has sought to take a free-ride on the coattails of ProBatter's hard work and investment through sales of its infringing ALL STAR PRO 5000. Joyner's ALL STAR PRO 5000 is an inferior and cheaper product to ProBatter's products, a point that Joyner repeatedly emphasizes when it sells its product as a ProBatter equivalent at half (or less) the price. Undaunted, however, Joyner touts his product as: "The World's <u>Best</u> Video Pitching Simulator." A true and correct copy of the advertisement in which this specious claim is made is attached hereto as Exhibit A. Fallacious assertions of this type are injurious to ProBatter when Joyner advises the marketplace that its products are comparable to ProBatter's products. With such false assertions and with sales of the ALL STAR PRO 5000, Joyner will continue to taint the market with its substandard, infringing products.

---

courtesy, ProBatter agreed to, and more recently, on the negotiated due date for Joyner's responses, Joyner requested an additional extension of time, to which, again out of professional courtesy, ProBatter agreed.

Accordingly, ProBatter's actions in filing lawsuits against Joyner's customers are justified. ProBatter has the right not only to assert its patent rights, but it also has the right to defend its business and its reputation in the marketplace. The filing of the lawsuits against Joyner's customers puts such individuals and entities on notice of the difference between Joyner's substandard, infringing products and ProBatter's superior, patent-protected products.

As for Joyner's concern that it may need to find local counsel and work with the various defendants in the customer suits, Joyner should have expected as much when Joyner continued to sell its infringing product to unsuspecting customers even though it is involved in this patent infringement suit.

Further, if Joyner has, as is alleged but not shown, undertaken to indemnify its customers, Joyner should have taken under advisement the reality that selling products which are the subject of a patent infringement lawsuit would likely incur additional lawsuits against those entities that purchased the infringing products.

ProBatter's actions in filing these lawsuits are beyond reproach. ProBatter needs to put such individuals and entities, and the rest of the industry, on notice of ProBatter's patent rights and of ProBatter's intention to enforce those rights against infringers.

Finally, judicial economy will not be served by enjoining the lawsuits against Joyner's customers. Different individuals and entities are involved in the customer lawsuits as well as different acts of infringement. Even if resolution of some issues in this case would be related to issues in the customer lawsuits, ProBatter would still not be able to impose such resolution against Joyner's customers without seeking enforcement through the courts in the jurisdictions where such customers are located. Accordingly, the principles of equity jurisprudence favor that ProBatter should not be enjoined from proceeding with its lawsuits against Joyner's customers.

## II. LEGAL ARGUMENTS

### A. PROBATTER SHOULD NOT BE ENJOINED FROM PURSUING ITS RIGHT TO PROTECT ITS PATENTS AGAINST JOYNER'S CUSTOMERS

As a patent owner, ProBatter is entitled to protect and enforce its patent rights against those who "without authority make[], use[], offer[] to sell, or sell[] any patented invention, within the United States ... during the term of the patent therefor, infringes the patent." 35 U.S.C. §271. This includes the right to protect and enforce its patents against infringement by the customers of the infringing manufacturer. "A patent owner has a cause of action, separate and independent from that against an infringing manufacturer, to recover profits and damages and to restrain one who resells a product which he purchased from an infringing manufacturer." *Triangle Conduit & Cable Co., Inc. v. National Electric Products Corp.*, 138 F.2d 46 (3d Cir. 1943); *See also Gamewell Fire Alarm Telegraph Co. v. Star Electric Co.,* 199 F. 188, 189 (N.D. N.Y. 1912) (explaining that "[s]o long as the statute gives the right to the complainant to bring suit against every user of the alleged infringing device, it is probably unwise for the court to interfere by injunction with the assertion of that right"). Accordingly, ProBatter should not be enjoined from enforcing its patent rights against Joyner's customers where ProBatter has the statutory right to do so.

Moreover, recovery against just the manufacturer does not provide the patentee with recovery against the infringement conducted by customers of the manufacturer. "The owner of a patent cannot recover, in a suit against a manufacturer of an infringing article which he sells to retailers, the full relief to which he is entitled in suits against the retailers, and a decree for an injunction and damages against a manufacturer is no bar to suits against those who purchase

from the manufacturer and use or sell to others." *Kryptok Co. v. Stead Lens Co.*, 190 F.767, 770 (8th Cir. 1911) (citing *Birdsell v. Shaliol*, 112 U.S. 485, 488 (1884)). Accordingly, ProBatter is well within its rights to bring suits against customers of Joyner in order to recover damages from use of the infringing devices by Joyner's customers. *See also, Sundstrand Corp v. American Brake Shoe Company*, 315 F. 2d 273 (7th Cir. 1963) (finding that the District Court had erred in enjoining a patentee from its suit against a customer and explaining that absent a finding of harassment a patentee should not be enjoined from its "right to sue customers and users [which] is protected by statute"). ProBatter is not harassing Joyner's customers. ProBatter is only protecting its interests in the marketplace and its right to enforce its patents.

Joyner cites to *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir. 1977) to support its position that ProBatter should be enjoined from pursuing separate suits against Joyner's customers.[2] Yet, the situation in *Codex* is factually and procedurally different than this action. In *Codex*, the plaintiff had first filed an action against a customer of the manufacturer without having an action against the manufacturer directly. The manufacturer then brought a declaratory judgment action in its own forum. Thus, the question posed in *Codex* is really one of proper forum. The court in *Codex* found that the forum of the manufacturer was proper even though it was the second filed action because the manufacturer was the primary infringer.

---

[2] Joyner also cites to *Katz v. Lear Siegler Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) and to *William Gluckin & Co. v International Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969) for the proposition that a declaratory judgment action filed by the infringing manufacturer should qualify as the "first-filed" action, even if brought after the action filed against the customer of the infringing manufacturer, and that the customer suit should thus be enjoined. Yet, as discussed above this is a different situation. Moreover, in *Gluckin* the court found that there were far more substantial connections in the forum where the declaratory action was brought. Not only did the infringing manufacturer have substantial connections with the declaratory action forum, but the infringing customer and the plaintiff also had far more substantial connections with the declaratory action forum. However, such is not the situation in this case. Here, a suit is already proceeding directly against the manufacturer. Further, with the different uses of the infringing ALL STAR PRO 5000 by the various customers, the different suits are necessarily connected to those particular jurisdictions and have no connection to Iowa.

Conversely, ProBatter already has an action proceeding against the manufacturer, Joyner. Accordingly, this is not an issue of forum shopping as in *Codex*, but, rather, is an issue of allowing ProBatter to assert and protect its patent rights against other infringers. Further, as recognized in *Codex*, "[t]here may be situations, due to the prospects of recovery of damages or other reasons, in which the patentee has a special interest in proceeding against a customer himself, rather than solely as a shadow of the manufacturer...Nor do we mean to say that the balance of convenience might not indicate that the customer suit is in the more appropriate forum...." *Id.* at 738. ProBatter does have an interest in proceeding against Joyner's customers. ProBatter is concerned that if it does not immediately proceed against Joyner's customers directly, "the prospects of recovery of damages" from Joyner's customers will be non-existent. *Id.*

Further, Joyner has made no representation that it is able to be financially responsible for the damages incurred by the infringing conduct of its customers. ProBatter's rights would therefore be impaired if not allowed to continue unabated with its suits directly against Joyner's customers. *See American Chemical Paint Co. v. Thompson Chemical Corp.*, 244 F.2d 64 (9th Cir. 1957) (reversing the District Court's decision to enjoin plaintiff from customer suits where there was no showing that manufacturer had the financial ability to respond to damages for the infringements). As previously discussed, Joyner is not even able to pay for its own litigation costs, to say nothing of being able to pay for any ultimate liability for damages. Accordingly, it is highly unlikely that Joyner will be financially responsible for its customers. Therefore, ProBatter must be allowed to immediately proceed with its suits against Joyner's customers directly for the customers' infringements of ProBatter's patents.

10

Case 6:05-cv-02045-LRR   Document 101   Filed 10/30/06   Page 10 of 14

In addition, inasmuch as Joyner has alleged that it has an indemnity obligation to its various customers, Joyner cannot complain of a financial burden as to the customer lawsuits filed by ProBatter. Joyner has "voluntarily exposed itself to the possibility of defending its customers in distant jurisdictions." *Van Brode Milling Co. v. Kravex Manufacturing Corp.*, 158 F. Supp. 852, 853 (E.D.N.Y. 1958) (denying defendant's motion to stay other patent lawsuits in other district courts because of financial concerns). Accordingly, Joyner's indemnity obligation, if one exists, is not a reason to enjoin ProBatter from proceeding with separate lawsuits against Joyner's customers.

To support its argument that ProBatter should be enjoined from continuing with suits against Joyner's customers, Joyner cites to *Urbain v. Knapp Brothers Mfg. Co.*, 217 F.2d 810 (6th Cir. 1954). However, in *Urbain* the other suit filed by the plaintiff was against the distributor of the manufacturer, not against the customer of the manufacturer. From manufacturer to distributor the claims were identical as the distributor is directly in line with the manufacturer. ProBatter's suits against Joyner's customers are different than the claims against Joyner. The claims against Joyner involve Joyner's **manufacture and sale** of the infringing ALL STAR PRO 5000. The claims against Joyner's customers involve the customers' **use** of the infringing ALL STAR PRO 5000. Damages will continue to accrue each time that Joyner's customers use the infringing ALL STAR PRO 5000.

B. **IF THE COURT FINDS PROBATTER SHOULD BE ENJOINED, JOYNER SHOULD BE REQUIRED TO POST BONDS FOR ALL SUITS WHICH PROBATTER HAS FILED**

ProBatter believes that it is entitled to protect and enforce its patent rights against customers of Joyner pursuant to 35 U.S.C. § 271. ProBatter believes that a proper exercise by

this Court of its discretion will not result in an injunction prohibiting ProBatter from continuing with its suits against customers of Joyner. *See Kryptok Co. v. Stead Lens Co.*, 190 F.767, 769 (8th Cir. 1911) (explaining that grant of an injunction "rests in the discretion of the trial court, not in its arbitrary, whimsical will, but in its sound judicial discretion").

If this Court nevertheless decides in its discretion to enjoin ProBatter from proceeding with the suits against Joyner's customers, Rule 65(c) of the Federal Rules of Civil Procedure should apply to such decision. Rule 65(c) states that:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).

The posting of a bond has previously been required when a patentee has been enjoined from pursuing suits against other infringers. *See Bechik Products, Inc. v. Flexible Products, Inc.*, 225 F.2d 603, 607 (2d Cir. 1955) (explaining that "the injunction restraining the institution of suits against other contributors to [defendant's] infringement may issue only on condition that [defendant] furnish a bond conditioned on its payment to the plaintiff of any pecuniary award which may be made to it.").

Accordingly, if this Court should find that Joyner is entitled to enjoin ProBatter, Joyner should be required to post a security bond to preserve the rights of ProBatter for any damages which are awarded to it to the extent that ProBatter is wrongfully enjoined.

### III.  CONCLUSION

Based upon the foregoing reasons and arguments, ProBatter respectfully requests that Joyner Technologies Inc's Motion to Enjoin ProBatter's Recent Suits against Joyner's Customers be denied in all respects. Alternatively, ProBatter respectfully requests that if

ProBatter is enjoined from immediately pursuing its suits against customers of Joyner that Joyner be required to post a suitable bond to protect ProBatter's interests.

Dated: October 30, 2006

Respectfully submitted,

*[signature]*
Susan M. Schlesinger
GRIMES & BATTERSBY, LLP
488 Main Avenue
Norwalk, CT 06851-1008
Telephone: (203) 849-8300
Facsimile: (203) 849-9300
E-Mail: schlesinger@gandb.com

Stephen J. Holtman
SIMMONS, PERRINE, ALBRIGHT
& ELWOOD, P.L.C.
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Telephone: (319) 366-7641
Facsimile: (319) 366-1917
E-Mail: sholtman@simmonsperrine.com

*Attorneys for Plaintiff*
*ProBatter Sports, LLC*

*Of Counsel:*

GRIMES & BATTERSBY, LLP
Edmund J. Ferdinand, III, Esq.
James G. Coplit, Esq.
Russell D. Dize, Esq.
488 Main Avenue
Norwalk, CT 06851-1008
Telephone: (203) 849-8300
Facsimile: (203) 849-9300

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 30, 2006, the foregoing Brief in Resistance to Joyner Technologies Inc.'s Motion to Enjoin ProBatter's Recent Suits Against Joyner's Customers was electronically filed with the Clerk of Court using the CM/ECF system with notice of such filing sent to the following:

James S. Zmuda, Esq.
Arthur E. Eggers, Esq.
CALIFF & HARPER, P.C.
506 15th Street, Suite 600
Moline, Illinois 61265
Telephone: 309-764-8361
Facsimile: 309-764-8394
jzmuda@califf.com
aeggers@califf.com
Attorneys for Defendant
Joyner Technologies, Inc.

John C. McNett, Esq.
Quentin G. Cantrell, Esq.
WOODARD EMHARDT
MORIARTY MCNETT &
HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, Indiana 46204-5137
Telephone: 317-634-3456
Facsimile: 317-637-7561
jcantrell@uspatent.com
jmcnett@uspatent.com

_____
Susan M. Schlesinger