UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| PROBATTER SPORTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:05-cv-02045 |
| | ) | |
| JOYNER TECHNOLOGIES, INC., and | ) | **JOYNER TECHNOLOGIES,** |
| UNIVERSITY OF NORTHERN IOWA, | ) | **INC.'S REPLY IN SUPPORT** |
| | ) | **OF MOTION TO ENJOIN** |
| Defendants. | ) | **PROBATTER'S RECENT** |
| _____ | ) | **SUITS AGAINST** |
| | ) | **JOYNER'S CUSTOMERS** |
| JOYNER TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant-Counterplaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PROBATTER SPORTS, LLC, | ) | |
| | ) | |
| Plaintiff-Counterdefendant. | ) | |

## I.    INTRODUCTION

The most significant feature of ProBatter's brief opposing an injunction against the collateral customer suits is what it did not say: nowhere did ProBatter deny that the outcomes of those cases will be controlled by the decision on the merits of their infringement suit against Joyner. That, by itself, is more than sufficient reason to enjoin the collateral customer suits, in the name of judicial efficiency. The inefficiency is even greater now that ProBatter has filed two additional customer suits, in South Carolina and Texas, and presumably will file more when it finds other Joyner customers, unless this Court rules otherwise.

ProBatter openly admits that it believes the defendants in the collateral suits are "notoriously under funded," and will "likely go out of business" when (and if) confronted with liability for patent infringement. ProBatter's object in these cases therefore cannot be to protect its interest in an award of damages. (This fact is also obvious given that, even were ProBatter to prevail, the amount of damages for any given defendant would be insufficient to pay a patent attorney's fees for more than a few days—not nearly enough to justify a campaign of individual lawsuits across the country.)

Nor has ProBatter filed these actions to secure injunctive relief. The Iowa case will surely come to trial first, and ProBatter's failure to timely seek a preliminary injunction against Joyner's sales rules out that option in the customer suits. ProBatter itself admits that each of the sales involving the collateral suit defendants took place *after* the instant case was filed. Perhaps ProBatter believed it could not secure a preliminary injunction or was reluctant to post the required bond to shut down Joyner's sales. Whatever its reason, ProBatter's campaign of collateral suits as a self-help remedy for its failure to file a preliminary injunction motion is a misuse of the judicial process.

ProBatter's brief argues passionately that Joyner has brought these collateral suits upon itself by continuing to sell its product while this suit was ongoing. But the law plainly frowns on wasting judicial resources on collateral, duplicative customer suits, so ProBatter is wrong. Wasteful and duplicative litigation is not the just and natural punishment for any patent infringement defendant who declines a self-imposed preliminary injunction. Nor would it be sound policy for the courts to force all patent infringement defendants to choose between a self-imposed preliminary injunction and massive, wasteful litigation in a large number of collateral, customer suits.

On the other hand, even if ProBatter were, *arguendo*, at some point in the past, entitled to a preliminary injunction, losing that claim is the just and natural consequence of their decision not to file a motion for a preliminary injunction in a timely fashion. It should be especially troubling that ProBatter is attempting to secure the effective equivalent without having to establish the factual prerequisites for that extraordinary remedy—in particular, a likelihood of success on the merits. Joyner's pleadings in this case raise serious question as to likelihood of ProBatter being able succeed on the merits, including charges of fraud alleged with particularity. ProBatter did not even directly challenge Joyner's assertions of prior art in the 1996 Scott Machines nor Joyner's early 1990's video pitching machine work in its main brief on this motion.

ProBatter's campaign to burden by imposing litigation costs, rather than by efficiently addressing the merits, is particularly inappropriate since the amount in controversy for any particular customer suit is too small to justify the expense of a federal lawsuit. The University of Northern Iowa already agreed to a self-imposed preliminary injunction for precisely that reason, despite Joyner's offer to defend and indemnify UNI at no charge to it, and despite the fact that UNI refused to acknowledge in its settlement that the ProBatter patents were valid or infringed or enforceable.

As a final point, ProBatter's appears to believe that it is entitled to use the collateral suits as an "end run around" this Court's protective order, by stating, "a Protective Order in one case has no bearing on the issues in another case." ProBatter now characterizes Steve Holtman, their only counsel of record for over a year in Iowa, as a "local counsel," rather than lead counsel.

**I.     Eighth Circuit Law Does Not Contradict Federal Circuit Precedent Holding Injunctions a Proper Mechanism for Enforcing the Preference Against Wasteful Customer Suits**

ProBatter does not dispute that the result in the Iowa suit will be dispositive of the customer suits. It cannot, since the issue in all of the cases is whether Joyner's Allstar equipment infringes the '134 or '512 Patents. Yet the key issue that generally controls whether a customer suit should be enjoined is whether that suit is truly duplicative of the suit against the manufacturer. *See Katz v. Lear Siegler Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) (citing *Kerotest Mfg. v. C-O-Two Fire Equip.*, 342 U.S. 180 (1952)).

ProBatter argues that 8th Circuit law—apparently in contrast to every other circuit in which the Federal Circuit has addressed the use of injunctions to enforce the customer suit exception— does not permit injunctions against customer suits. ProBatter relies upon the 1911 *Kryptok* decision to support this contention. *Kryptok Co. v. Stead Lens Co.*, 190 F. 767 (8th Cir. 1911). To the extent that *Kryptok* actually stands for that proposition, its continuing vitality in view of the Federal Circuit's more recent jurisprudence would be in serious doubt.

It is not even clear whether regional circuit law governs, since the Federal Circuit has never decided a customer suit exception case in which the choice of law controlled the outcome. The Federal Circuit has generally cited the regional standard in its cases upholding injunctions against customer suits. However, were the Federal Circuit ever to take up a case in which the regional circuit law dictated a different outcome, it would invoke "the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits." *Genentech Inc. v. Eli Lilly and Co.*, 998 F.2d 931 (Fed. Cir. 1993). Whether a patentee is permitted to wage a simultaneous campaign against an accused infringer's customers should not be decided by the forum in which the patentee chooses to file its initial suit. Thus,

even if *Kryptok* once stood for the proposition for which ProBatter cites it, the subsequent creation of the Federal Circuit, and its more recent decisions upholding the use of injunctions against customer suits, strongly suggest that it cannot still do so.

In any event, the facts of the present case are clearly distinct from those of *Kryptok*, and dictate the opposite outcome, even applying the *Kryptok* standard. Unlike the plaintiff in *Kryptok*, ProBatter has not yet made a prima facie case of infringement; nor does it appear to be in any hurry to have a decision rendered on the merits. The *Kryptok* court found the plaintiff had made a prima facie case of infringement, and that, since then, the defendant was responsible for any additional delay in reaching a final decision in the manufacturer suit. On those facts, an injunction against the customer suits obviously makes far less sense. Furthermore, the customers in *Kryptok* were distributors, who resold the accused product in bulk, and, presumably, the amount in controversy in each customer case was therefore a meaningful sum. (The product was bifocal lenses, which were incorporated into bifocal glasses that were then sold retail.) The *Kryptok* court specifically found that the purpose of the customer suits was to recover monetary damages from the resale of the infringing product, and that there was no evidence that the object of the customer suits was harassment.

In contrast, the amount in controversy in ProBatter's customer suits is so small that it cannot possibly justify a campaign of federal lawsuits across the country. On the other hand, the hardship to Joyner imposed by the customer suits is substantial. Thus, the second prong of the *Kryptok* standard is satisfied: an injunction would relieve more hardship for Joyner than it would impose upon ProBatter For exactly the same reasons, the first prong is also satisfied. The legitimate value of the customer suits to ProBatter is simply too small to justify the suits. Yet those suits do impose much unnecessary hardship on ProBatter's competitor, Joyner. Joyner will

5

be burdened with providing legal defenses in what is so far at least seven additional lawsuits throughout the U.S. Joyner will also be burdened by dealing with ProBatter's intimidation of potential new customers, before this Court has had a chance to address the merits even in a preliminary injunction setting. The only reasonable inference is that ProBatter's principal object in filing the customer suits is precisely to inflict that hardship.

### A. The Customer Suits Have Little or No Legitimate Value to ProBatter

Among the eight customers ProBatter has sued, a total of 12 units were sold. Each unit typically sells for about $20,000[1] including the roughly $6,500 price of the HomePlate machine. The customer typically buys $2000 in accessories and pays roughly $2,000 for installation. ProBatter markets a competitive product for use with a HomePlate machine for about $14,000, and has the customer purchase the HomePlate machine directly from Sports Tutor. Joyner has a similarly priced offering without a HomePlate included. Some of the customer defendants don't even own Joyner's units; but merely lease them, or just use them. And even were ProBatter ultimately to prevail, the actual award for each machine would only be a small fraction of $14,000, since ProBatter is entitled only to a reasonable royalty or its lost profit.[2] Thus, the total amount in controversy in these cases is dwarfed by litigation costs and expenses.

But even if ProBatter sincerely believed such small awards could justify the cost of the suits, it would still be entitled to pursue those actions if and when it proved its infringement case before this Court. Consequently, even the small nominal amount in controversy over-represents the potential harm to ProBatter from an injunction. That small amount must be further

---

[1] Except Joyner's first installation only cost UNI a total of about $13,000, including the HomePlate purchased from Sports Tutor.
[2] ProBatter's $14,000 product should not be confused with ProBatter's other more expensive products that do not incorporate a HomePlate pitching machine.

6

discounted by whatever chance that the delay might render the customers more judgment proof than ProBatter contends they already are. If, as ProBatter appears to believe, the customers are already judgment proof, then the injunction would cause *no* harm to ProBatter's ability to recover money damages.

Nor is there a basis for ProBatter's contention that its desire for an injunction against these customers justifies these cases. ProBatter will not get a final judgment in the customer cases nearly as soon as it could expect in this case (with an 18 month head start, and trial presently set for 2007); but a final judgment in this case would certainly simplify and accelerate final judgment in the customer suits. And ProBatter is not entitled to preliminary injunctions against those customers, since, among other reasons, it declined to timely file for a preliminary injunction against Joyner. As ProBatter itself admits, all of the sales in question took place since the start of this case, and, therefore, would never have happened had ProBatter secured a preliminary injunction in this case.

B. *The Customer Suits Impose Substantial Hardship on Joyner*

Joyner is obligated to indemnify each of its customers for any liability, and, in practical reality, is obliged to provide them with a defense against the infringement suits. ProBatter complains that Joyner has provided no evidence of such obligations. The obligation to indemnify is imposed by practical business realities as well by law. *See* U.C.C. § 2-312(3) (imposing warranty of non-infringement on sales of goods by merchants). Joyner's lead counsel in the Iowa case, John McNett, will be lead counsel for all defendants as to all the known, pending customer suits, although formal papers to that effect have yet to be filed in all cases.

7

### C. ProBatter's Object in Filing the Customer Suits Is Primarily to Impose an Unnecessary Burden on Joyner

It strains credulity to suggest that ProBatter was not well aware of both the statutory obligations of the U.C.C. and the practical obligation to provide a patent infringement defense for one's customers. In view of the trivial legitimate value of the customer suits to ProBatter, given the presence of this Iowa case to comprehensively address the merits, coupled with ProBatter's stated belief that Joyner has limited resources, the reasonable inference is that ProBatter filed these suits precisely in order to impose this hardship on Joyner.

## II. The Court Should Not Require a Bond

It does not appear that a bond is appropriate security for ProBatter's interest in simultaneous prosecution of the customer suits, because, as discussed above, the net monetary cost to ProBatter of delaying those suits is minimal. No reason has been shown by ProBatter why any minor alleged damage caused by a customer's brief use of a pitching machine in their business while the customer suits are delayed will make them any less able to satisfy any money judgment. Certainly the immediate pursuit of a federal lawsuit against a customer will not aid its financial condition. Moreover, an injunction against prosecution of other cases can be granted without the requirement of a bond, as noted in *Urbain v. Knapp*, 217 F.2d 810, 815-6 (6th Cir. 1954).

Since it cannot reasonably be believed that the grant of the injunction against prosecution would impair ProBatter's eventual collection of whatever monetary award it might win, a bond would be of no legitimate use to ProBatter. It would appear that ProBatter is simply looking for ways to impose financial burdens on its competitor Joyner, without having to address the merits. The Court should therefore use its discretion to deny ProBatter's request for a bond.

### III. CONCLUSION

Joyner respectfully asks this Court to enjoin ProBatter during the pendency of this Iowa case, from prosecuting any actions asserting its patents against Joyner's customers, and requests that it deny ProBatter's request for a bond.

JOYNER TECHNOLOGIES, INC.,
Defendant-Counterplaintiff

*/s/ James S. Zmuda*

_____
James S. Zmuda, Attorney No. 0011444
CALIFF & HARPER, P.C.
506 15th Street, Suite 600
Moline, Illinois 61265
Telephone:     (309) 764-8361
Facsimile:      (309) 764-8394

and

*/s/ John C. McNett*

_____
John C. McNett
Quentin G. Cantrell
WOODARD EMHARDT MORIARTY
MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, Indiana 46204-5137
Telephone:     (317) 634-3456
Facsimile:      (317) 637-7561

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| PROBATTER SPORTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6:05-cv-02045 |
| ) | |
| JOYNER TECHNOLOGIES, INC., and ) | **CERTIFICATE OF SERVICE** |
| UNIVERSITY OF NORTHERN IOWA, ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ) | |
| JOYNER TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant-Counterplaintiff ) | |
| ) | |
| vs. ) | |
| ) | |
| PROBATTER SPORTS, LLC, ) | |
| ) | |
| Plaintiff-Counterdefendant. ) | |

I hereby certify that on November 2, 2006 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

sholtman@simmonsperrine.com
krottman@simmonsperrine.com
daniel.rosenberg@lawiowa.com
jamie.wagner@lawiowa.com
david.tank@lawiowa.com
heather.wilson@lawiowa.com
jzmuda@califf.com
aeggers@califf.com
jketner@califf.com
qcantrell@uspatent.com
jmcnett@uspatent.com
schlesinger@gandb.com

James S. Zmuda, Attorney No. 0011444
CALIFF & HARPER, P.C.
506 15th Street, Suite 600
Moline, Illinois 61265
Telephone: (309) 764-8361
Facsimile: (309) 764-8394

and

*/s/ John C. McNett*
_____

John C. McNett
Quentin G. Cantrell
WOODARD EMHARDT MORIARTY
MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, Indiana 46204-5137
Telephone: (317) 634-3456
Facsimile: (317) 637-7561