# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| PROBATTER SPORTS, LLC,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>JOYNER TECHNOLOGIES, INC.,<br><br>    Defendant/Counterclaim-Plaintiff. | No. 05-CV-2045-LRR<br><br>**ORDER** |

## *TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.*    *Iowa Lawsuit* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *B.*    *Connecticut Lawsuit* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *C.*    *Customer Lawsuits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*IV.*  *JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*V.*   *ANTISUIT INJUNCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *A.*    *Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *1.*    *Joyner's arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *2.*    *ProBatter's arguments* . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.*    *Choice of Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *C.*    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

*VI.*  *BOND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*VII.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

## I. INTRODUCTION

Before the court is the Motion to Enjoin ProBatter's Recent Suits Against Joyner's Customers ("Motion") (docket no. 96), filed by Defendant/Counterclaim-Plaintiff Joyner Technologies, Inc. ("Joyner").

## II. RELEVANT PRIOR PROCEEDINGS

On October 19, 2006, Joyner filed the Motion. On October 30, 2006, Plaintiff/Counterclaim-Defendant ProBatter Sports, LLC ("ProBatter") filed a Resistance. On November 2, 2006, Joyner filed a Reply.

## III. BACKGROUND

### A. Iowa Lawsuit

On May 17, 2005, ProBatter filed a Complaint in this court against Joyner Technologies, Inc. ("Iowa Lawsuit"). The Iowa Lawsuit concerns two patents, the "'134 Patent"[1] and the "'512 Patent,"[2] which ProBatter holds on the ProBatter Simulator.[3] ProBatter alleges that "Joyner has created, is selling and has sold to . . .[the University of

---

[1] United States Patent No. 6,186,134, entitled "Pitching System with Video Display Means."

[2] United States Patent No. 6,513,512, entitled "Pitching System With Video Display Means."

[3] The ProBatter Simulator is a baseball video pitching simulator. Complaint (docket no. 1-1), at ¶ 9. It is comprised of a three-wheel pitching machine, a computer control and a video display. *Id.* It throws different types of pitches at varying speeds and locations, while displaying a video image of a life-sized baseball pitcher on a projection screen. *Id.* The video image of the pitcher and the release of the baseball are synchronized so it appears as if the pitcher is throwing the ball. *Id.* The ProBatter Simulator features a computer touch screen for selecting preprogrammed sequences of pitches. *Id.*

Northern Iowa ("UNI")[4]], a video pitching display system referred to as the 'ALLSTAR PRO 5000[.]'" Complaint (docket no. 1-1), at ¶ 13. The ALLSTAR PRO 5000 "is adapted to be used in conjunction with a HomePlate programmable pitching machine [("HomePlate")] marketed by Sports Tutor, Inc. [("Sports Tutor")]." *Id.*

ProBatter's Complaint contains three causes of action. First, ProBatter alleges that Joyner is contributorily infringing and actively inducing the infringement of the '134 Patent and the '512 Patent, in violation of 35 U.S.C. § 271(b) and (c). Second, ProBatter alleges that Joyner has literally infringed the same two patents, in violation of 35 U.S.C. § 271(a). Third, ProBatter alleges that Joyner's actions "constitute unfair competition and an unfair trade practice under the common law." ProBatter seeks injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs.

Joyner denies the substance of ProBatter's Complaint and asserts eleven affirmative defenses. In Count I of its Second Amended Counterclaim,[5] Joyner seeks a declaratory judgment of non-infringement, invalidity and unenforceability of the '134 Patent and the '512 Patent. In Counts II and III, Joyner alleges common law unfair competition and abuse of process.

---

[4] The Complaint also named UNI as a defendant. On October 23, 2006, ProBatter and UNI settled.

[5] On July 20, 2005, Joyner filed an Answer, Affirmative Defenses and Counterclaims (docket no. 19). On August 26, 2005, the magistrate judge struck this pleading because Joyner had not retained licensed counsel (docket no. 22). Joyner hired counsel and, on September 15, 2005, Joyner filed an Answer, Affirmative Defenses and Counterclaim (docket no. 25). On March 1, 2006, Joyner filed an Answer, Affirmative Defenses and Amended Counterclaim (docket no. 54). On June 26, 2006, Joyner filed its Answer, Affirmative Defenses and Second Amended Counterclaim (docket no. 71).

Since February of 2006, the court has ruled on a number of substantive motions.[6] The parties have conducted settlement negotiations, and discovery is now underway. A claim construction ("*Markman*") hearing is set for May 7, 2007. Trial is set for the two-week period beginning on October 15, 2007.

## B. Connecticut Lawsuit

On December 28, 2005, ProBatter sued Sports Tutor in the United States District Court for the District Court of Connecticut ("Connecticut Lawsuit"). In the Connecticut Lawsuit, ProBatter alleges that Sports Tutor infringed two other patents that ProBatter holds on the ProBatter Simulator by marketing and selling HomePlate.

On February 2, 2006, Sports Tutor filed a Motion to Intervene in the Iowa Lawsuit. On March 10, 2006, the magistrate judge denied the Motion to Intervene. *See generally ProBatter Sports, LLC v. Joyner Techs., Inc.*, No. 04-CV-2045-LRR, 2006 WL 625874 (N.D. Iowa Mar. 10, 2006). The magistrate judge made clear, however, that he was not resolving whether the court could exercise jurisdiction over the two patents at issue in the Connecticut Lawsuit. *See id.* at *4 (discussing the possibility that the district court might retain jurisdiction over the two other patents). Sports Tutor did not appeal the magistrate judge's order to the district court pursuant to Federal Rule of Civil Procedure 72.

---

[6] *See, e.g., ProBatter Sports, LLC v. Joyner Techs., Inc.*, 2006 U.S. Dist. LEXIS 74218 (Oct. 11, 2006) (docket no. 91) (granting in part and denying in part ProBatter's request for a protective order and adopting Joyner's proposed protective order); *ProBatter Sports, LLC v. Joyner Techs., Inc.*, 2006 U.S. Dist. LEXIS 60232 (Aug. 23, 2006) (docket no. 74) (denying Joyner's motion to stay the case pending resolution of the Connecticut Lawsuit and ordering ProBatter to show cause why it failed to disclose its expert witnesses in a timely fashion); *ProBatter Sports, LLC v. Joyner Techs., Inc.*, 2006 U.S. Dist. LEXIS 3223 (Jan. 17, 2006) (docket no. 44) (denying ProBatter's motion to dismiss Counts II and III of Joyner's counterclaim); *see also* Order (docket no. 89) (granting contested motion for attorney to appear *pro hac vice*); Order (docket no. 22) (granting motion to strike and denying motion for entry of default).

A motion is pending in the Connecticut Lawsuit to transfer the Connecticut Lawsuit to the Northern District of Iowa for consolidation with the Iowa Lawsuit.

### C. Customer Lawsuits

Beginning on October 5, 2006, ProBatter filed five lawsuits (collectively, the "Customer Lawsuits") against Joyner's customers. *See ProBatter Sports, LLC v. Big League Edge, LLC*, 06-CV-1449-CMP (W.D. Wash. Oct. 5, 2006); *ProBatter Sports, LLC v. Up to Bat West, LLC*, 06-CV-02425-SO (N.D. Ohio Oct. 6, 2006); *ProBatter Sports, LLC v. John Doe Corp. and Chris Mastoridis*, 06-CV-05463-ADS-ARL (E.D.N.Y. Oct. 10, 2006); *ProBatter Sports, LLC v. Doctor Yeager's Baseball Academy, LLC*, No. 2:2006cv07840-LMA-DEK (E.D. La. Oct. 11, 2006); *ProBatter Sports, LLC v. Frozen Ropes New Orleans—N. Shore, LLC*, No. 2:2006cv07841-MVL-SS (E.D. La. Oct. 11, 2006). In each of the Customer Lawsuits, ProBatter alleges that one of Joyner's customers has literally infringed the '134 Patent and the '512 Patent by using the ALLSTAR PRO 5000 in combination with a HomePlate pitching machine, in violation of 35 U.S.C. § 271(a).

### IV. JURISDICTION

The court has original jurisdiction of civil actions "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). It also has jurisdiction over related claims for unfair competition. *Id.* § 1338(b). ProBatter's Complaint and Joyner's Second Amended Counterclaim raise various claims of patent infringement, in violation of 35 U.S.C. § 271, and common law unfair competition. Therefore, the court has subject-matter jurisdiction pursuant to § 1338(a) and (b).

## V. ANTISUIT INJUNCTION

### A. Arguments

#### 1. Joyner's arguments

Joyner asks the court to enjoin ProBatter from prosecuting the Customer Lawsuits, as well any other lawsuits against its customers based on the '134 Patent or the '512 Patent, during the pendency of the Iowa Lawsuit. ProBatter resists Joyner's request for an antisuit injunction.

Relying in part on *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990), Joyner maintains that the court should issue an antisuit injunction because (1) the real parties in interest in the Iowa Lawsuit and the Customer Lawsuits are the same and (2) the fighting issues in the Iowa Lawsuit and the Customer Lawsuits are the same. Joyner contends that it is the real defendant in interest in all of the Customer Lawsuits, because it has agreed to indemnify its customers. Joyner represents that the fighting issues in the Customer Lawsuits are whether Joyner's ALLSTAR PRO 5000 product infringes either the '134 Patent or the '512 Patent. Because the parties and the issues are the same, allowing the Customer Lawsuits to proceed would waste judicial resources. Joyner points out that the Iowa Lawsuit is the first-filed "manufacturer" action and, therefore, should take priority over all subsequently filed "customer" lawsuits.

Joyner further opines that ProBatter brought the Customer Lawsuits in bad faith, in order to (1) intimidate Joyner's customers, (2) increase Joyner's litigation costs and (3) unnecessarily burden Joyner "with multiple indemnification obligations for pointless, redundant litigations." Brief in Support of Motion (docket no. 96-2), at 2. Joyner also claims that the Customer Lawsuits are an attempt by ProBatter at an "end run" around the court's recent decision to deny one of ProBatter's attorneys access to Joyner's trade secrets. *Id.* (referencing *ProBatter Sports, LLC v. Joyner Techs., Inc.*, 2006 U.S. Dist.

LEXIS 74218 (Oct. 11, 2006) (docket no. 91)). Joyner opines that ProBatter will not suffer any prejudice if an antisuit injunction is issued, because the statute of limitations in patent cases is six years and the Iowa Lawsuit is well underway.

### 2. *ProBatter's arguments*

According to ProBatter, equity demands that it be permitted to protect and enforce its patent rights against all infringers, including Joyner's customers. Relying in part on *Kryptok Co. v. Stead Lens Co.*, 190 F. 767, 769 (8th Cir. 1911), ProBatter proffers eleven reasons why an antisuit injunction should not issue: (1) the customers are not parties in the Iowa Lawsuit; (2) ProBatter will suffer irreparable harm if it is not allowed to immediately proceed with the lawsuits, because the defendants are "all batting cages, which are notoriously under funded [and] likely go out of business when later confronted with liability," Resistance (docket no. 101-1), at 3; (3) a six-year statute of limitations is "of no use . . . if Joyner's customers are allowed to continue to infringe ProBatter's patents in the meantime and then go out of business," *id.*; (4) Joyner is a "family business" and, if ProBatter wins this lawsuit, "Joyner will no longer be in a position to satisfy any judgment against it," *id.* at 3-4; (5) Joyner has not proven that it has an indemnity obligation to its customers; (6) Joyner has not offered to post a bond; (7) Joyner will suffer little harm if the lawsuits proceed; (8) ProBatter did not let this case "languish for month after month," *id.* at 5; (9) "Joyner [used] the settlement negotiations as a sham to buy time to establish its infringing product in the marketplace," *id.*; (10) ProBatter is not attempting an "end run" around the court's order to deny one of ProBatter's attorneys access to Joyner's trade secrets, *id.* at 6; and (11) ProBatter has invested "years" and "millions" in the ProBatter Simulator, *id.*

ProBatter predicts that, if the court issues an antisuit injunction, "Joyner will continue to taint the market with its substandard, infringing products." *Id.* at 6. ProBatter

7

opines that Joyner is trying to continue its "free-ride on the coattails of ProBatter's hard work and investment through sales of its infringing ALLSTAR PRO 5000," *id.*, which is "an inferior and cheaper product" than the ProBatter Simulator, *id.*

ProBatter concedes that the Iowa Lawsuit and the Connecticut Lawsuit involve the same patents and many of the same issues. It claims, however, that an antisuit injunction would not promote judicial economy, because (1) different parties are involved, (2) some issues are different and (3) ProBatter cannot obtain a remedy against Joyner's customers in the Iowa Lawsuit, because this court does not have personal jurisdiction over them.

### B. Choice of Law

"[I]njunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit." *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004); *see also Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (holding that Federal Circuit law applied to "[t]he question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement"), *abrogated on other grounds by Wilton v. Seven Falls, Co.*, 515 U.S. 277, 289 (1995); *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir. 2004) ("[T]his court reviews a district court's decision granting, denying or modifying an injunction, in a patent case, for abuse of discretion, applying Federal Circuit law."). Therefore, the court shall apply Federal Circuit Court of Appeals case law. The analytical framework of *Katz*,[7] not *Kryptok*, applies.

---

[7] Although the *Katz* court stated that it was "[a]pplying the law of the First Circuit," 909 F.2d at 1462, the Federal Circuit Court of Appeals subsequently held that this statement was unfortunate and not applicable to the choice of law analysis for the propriety of injunctive relief. *See Lab. Corp.*, 384 F.3d at 1331 ("[T]he reference to First Circuit
(continued…)

## C. Analysis

The case at bar is indistinguishable from *Katz*. In *Katz*, the plaintiff sued Lear Siegler, Inc. in federal district court for infringement of certain patented firearms. *Katz*, 909 F.2d at 1460. On Lear Siegler's motion, Smith & Wesson, one of Lear Siegler's subsidiaries, was joined as a defendant, because Smith & Wesson manufactured the allegedly infringing firearms. *Id.* at 1461. Smith & Wesson asked the district court to enjoin a lawsuit that the plaintiff had brought in another federal district court against several of Smith & Wesson's customers for infringement. *Id.* The district court granted the motion, and the plaintiff appealed. *Id.*

The Federal Circuit Court of Appeals affirmed. As a threshold matter, the court held that a party seeking an antisuit injunction need not satisfy the traditional four-part test for entitlement to a preliminary injunction, including the requirement of showing a likelihood of success on the merits. *Id.* at 1462-63[8]; *cf. Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006) (directing district courts to consider (1) the movant's likelihood of success on the merits; (2) the threat of immediate irreparable harm to the movant; (3) the balance of hardships; and (4) the public interest). Instead, "a

---

[7](…continued)
law in *Katz* regarding the widely applied abuse of discretion review should not be read to foreclose consideration of the important policy factors dictating the choice of law in cases in which the regional circuit applies a different standard than the Federal Circuit.").

[8] Other circuit courts of appeal have similarly narrowed the inquiry in the context of foreign antisuit injunctions. *See, e.g.*, *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003) ("Although both the district court and the parties discussed all four prerequisites to the issuance of a traditional preliminary injunction, the suitability of such relief ultimately depends on considerations unique to antisuit injunctions."); *see also E & J Gallo Winery v. Andina Licores, S.A.*, 446 F.3d 984, 990-91 (9th Cir. 2006) (similar)).

primary question is whether the issues and the parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185-86 (1952)).

Applying the narrower standard, the Federal Circuit Court of Appeals observed:

> [L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer. . . . "At the root of [this] preference . . . is the recognition that, in reality, the manufacturer is the true defendant in the customer suit . . . it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products."

*Id.* at 1464 (quoting *Codex Corp. v. Milgo Elecs. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)); *see also* U.C.C. § 2-312(3) (2004) ("Unless otherwise agreed, a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement . . . ."). Because the manufacturer, Smith & Wesson, was the real party in interest in the customer suits, the court held that it did not matter that Smith & Wesson's customers had not agreed to be bound by the result of the manufacturer suit; it was sufficient that Smith & Wesson had represented to the court that "resolution of the major issues before that court, including patent infringement [and] patent validity . . . will resolve these issues as to their customers." *Katz*, 909 F.2d at 1464. The court recognized that "there may be additional issues involving the defendants in the [customer lawsuits]," but stated that "their prosecution will be advanced if [plaintiff] is successful on the major premises being litigated in [*Katz*], and may well be mooted if [plaintiff] is unsuccessful." *Id*. On this basis, the court concluded that the district court did not abuse its discretion in issuing the

injunction. *Id.*

The same analysis applies with equal force here, at least with respect to the Customer Lawsuits. The parties do not dispute that resolution of the major issues before the court, including the issues of patent infringement and patent validity, will advance the prosecution or resolution of those issues in the Customer Lawsuits. The same two patents—and only those patents—are at issue in the Iowa Lawsuit and the Customer Lawsuits. Although there may be additional issues involving the defendants in the Customer Lawsuits, as ProBatter alleges, the resolution of the Iowa Lawsuit will nonetheless significantly advance the prosecution or resolution of the Customer Lawsuits. *See id.*; *cf.* Herbert F. Schwartz, *Patent Law & Practice*, at 64 (5th ed. 2006) ("Although a single holding of invalidity is usually fatal to a patent, a single victory on the issue of validity does not confer invincibility.").[9] Although the court does not read *Katz* to require the issuance of an injunction, *see, e.g.*, *Katz*, 909 F.2d at 1464 (concluding only that the injunction "was within the court's discretionary authority"), the court finds that the same reasons that guided the district court in *Katz* to issue an antisuit injunction warrant enjoining ProBatter from prosecuting the Customer Lawsuits until final disposition of the Iowa Lawsuit.

---

[9] The court notes that other factors weigh in favor of the issuance of an antisuit injunction here. The Iowa Lawsuit was filed more than a year before the Customer Lawsuits. *See Lab. Corp.*, 384 F.3d at 1332 (affirming order granting antisuit injunction where the action in which the injunction issued was first-filed). The Iowa Lawsuit is no longer in its infancy. A *Markman* hearing is set for May, and trial is set for November. Moreover, the court has expended considerable time and effort shepherding this case forward. Lastly, neither party has closer ties to the fora of the Customer Lawsuits than Iowa. Although Iowa is not the home forum of either ProBatter or Joyner, both parties conduct business on a national basis. *See id.* (affirming order granting antisuit injunction where both parties conducted business on a national basis).

That said, the court declines to enjoin ProBatter from prosecuting any lawsuit against any of Joyner's customers during the pendency of the Iowa Lawsuit. First, there is no indication that ProBatter intends to file any more lawsuits.[10] Second, even if ProBatter intends to file such lawsuits, it is presently unclear whether and to what extent those lawsuits might be related to the Iowa Lawsuit. In *Katz*, the Federal Circuit Court of Appeals made clear that not all lawsuits by the patentee against the manufacturer's customers should be enjoined. *See id.* at 1464 (reversing the part of the district court's order that enjoined a different lawsuit because there was "no good reason to unduly delay the resolution of major issues that will not be resolved in the [present] action"). Granting an antisuit injunction that forbids ProBatter from prosecuting lawsuits against all of Joyner's customers without knowing the nature of those lawsuits would be tantamount to writing Joyner a blank check to restrain ProBatter from asserting its legal rights. The court finds that the better course is to rule upon future disputes, if they occur, as they arise. *Cf. Kerotest*, 342 U.S. at 185-86 (stating that if the manufacturer files first, "subsequent *suits* against him by the patentee can[,] within the trial court's discretion[,] be enjoined pending determination [of the first-filed suit]" (emphasis added)).

For all of the foregoing reasons, the court shall grant in part and deny in part the Motion. The court shall enjoin ProBatter from further prosecuting the Customer Lawsuits until the final resolution of the Iowa Lawsuit, but at this time shall decline to enjoin ProBatter from filing other lawsuits against other customers.

---

[10] In its Reply, Joyner states that "ProBatter has filed two additional customer suits, in South Carolina and Texas . . . ." Reply (docket no. 102), at 1. Joyner does not make any representation as to what issues are involved in those suits and has not provided the court with the parties or case numbers of those suits.

## VI. BOND

In the alternative, ProBatter requests that the court require Joyner to post a bond "to preserve the rights of ProBatter for any damages which are awarded to it to the extent that ProBatter is wrongfully enjoined." Resistance (docket no. 101-1), at 12. In its Reply, Joyner resists ProBatter's request for a bond. On this issue, the law of the Eighth Circuit Court of Appeals applies. *See Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1467 (Fed. Cir. 1997) ("To determine the scope of the trial court's discretion with respect to [the] award of an injunction bond, we look to the law of the regional circuit, for this issue is not unique to the Federal Circuit's exclusive assignment.")

In support of its request for a bond, Joyner cites to Federal Rule of Civil Procedure 65(c). That Rule provides:

> **(c) Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

Fed. R. Civ. P. 65(c) (emphasis in original).

The plain language of Rule 65(c) indicates that, when the court issues a restraining order or a preliminary injunction, it must require the movant to give security. *Id.*; *see, e.g., Telex Corp. v. Int'l Bus. Machs. Corp.*, 464 F.2d 1025, 1025 (8th Cir. 1972) (stating that Rule 65(c) requires the giving of security for a preliminary injunction); *Gateway E. Ry. Co. v. Terminal R.R. St. Louis,* 35 F.3d 1134, 1141 (7th Cir. 1994) ("This rule . . . makes security mandatory."); *Continuum Co., Inc. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989) ("[A] bond must be posted before a federal court may issue an interlocutory injunction. . . . "); *Atomic Oil Co. v. Bardahl Oil Co.*, 419 F.2d 1097 (10th

13

Cir. 1969) ("Rule 65(c) states in mandatory language that the giving of security is an absolute condition precedent to the issuance of a preliminary injunction."); *Motorola, Inc., v. Alexander Mfg. Co.*, 786 F. Supp. 808, 816 (N.D. Iowa 1991) (Hansen, J.) ("Security is required of plaintiff upon the imposition of a preliminary injunction."); 11A Wright & Miller, *Federal Practice & Procedure* § 2954 ("[Rule 65(c)] is phrased in mandatory terms and the conclusion seems inescapable that once the court decides to grant equitable relief under Rule 65 it must require security from the applicant."). *But see Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978) (holding that the court "may elect no security at all"); *United States v. Onan*, 190 F.2d 1, 7 (8th Cir. 1951) (holding that the district court's failure to require a bond was not reversible error); *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1278 & 1279 n.52 (N.D. Iowa 1995) (Bennett, J.) ("In this circuit, the rule as to whether a bond is mandatory or discretionary is somewhat uncertain . . . . [T]he court views Rule 65(c) as making the bond requirement mandatory, and any exceptions to that rule to be rare, and judge-made based on the equities of particular cases."). The amount of the bond rests within the sound discretion of the trial court. *See United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 745 (8th Cir. 2002).

Despite the mandatory language of Rule 65(c), the Eighth Circuit Court of Appeals has held that, if the injunction is designed "to aid and preserve the court's jurisdiction over the subject matter involved," security is not required. *Magidson v. Duggan*, 180 F.2d 473, 479 (8th Cir. 1950) (citations omitted); *see also Ferguson v. Tabah*, 288 F.2d 665 (2d Cir. 1961) (recognizing same principle); *Zenith Radio Corp. v. United States*, 518 F. Supp. 1347 (C.I.T. 1981) ("[W]here a federal court issues a preliminary injunction in aid of and in preservation of its jurisdiction, no security need be required pursuant to [R]ule 65(c)."); *United Fruit Co. v. Standard Fruit & S.S. Co.*, 282 F. Supp. 338, 340 n.3 (D.

Mass. 1968) (no security required for the issuance of an injunction enjoining another district court from further proceedings in a related action); *Bivins v. Bd. of Pub. Educ. & Orphanage*, 284 F. Supp 888, 899 (M.D. Ga. 1967). *But see Bechik Prods., Inc. v. Flexible Prods., Inc.*, 225 F.2d 603, 607 (2d Cir. 1955) (requiring bond for an antisuit injunction). This exception recognizes that "the party enjoined [is] the party that created any risk of damages for delay or duplication by filing the second, mirror-image suit . . . after . . . consenting to the jurisdiction [of the forum in which the injunction is granted]." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 n.20 (5th Cir. 1996).[11] Because the antisuit injunction the court issues in this order is designed to aid and preserve the court's jurisdiction over the various claims involving the '134 Patent and the '512 Patent, no bond is required. *Magidson*, 180 F.2d at 479.

## VII. CONCLUSION

**IT IS THEREFORE ORDERED**:

(1) Joyner's Motion to Enjoin ProBatter's Recent Suits Against Joyner's Customers (docket no. 96) is **GRANTED IN PART AND DENIED IN PART**; and

(2) ProBatter is enjoined from further prosecuting the Customer Lawsuits, namely, *ProBatter Sports, LLC v. Big League Edge, LLC*, 06-CV-1449-CMP

---

[11] The exception may be justified on two grounds. Some courts have held that an antisuit injunction is neither a "restraining order" or a "preliminary injunction." *See, e.g., G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096 n.8 (9th Cir. 2003) (holding that an antisuit injunction was a permanent injunction and thus beyond the purview of Rule 65(c) (citing *Ty, Inc. v. Pub'ns Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002)). Another court has stated that antisuit injunctions "can only work to avoid damages, not cause them." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 n.20 (5th Cir. 1996). On this latter theory, since it is within the discretion of the court to set the amount of the bond, the court is justified in setting the bond at some nominal amount or at $0.

(W.D. Wash. Oct. 5, 2006); *ProBatter Sports, LLC v. Up to Bat West, LLC*, 06-CV-02425-SO (N.D. Ohio Oct. 6, 2006); *ProBatter Sports, LLC v. John Doe Corp. and Chris Mastoridis*, 06-CV-05463-ADS-ARL (E.D.N.Y. Oct. 10, 2006); *ProBatter Sports, LLC v. Doctor Yeager's Baseball Academy*, LLC, No. 2:2006cv07840-LMA-DEK (E.D. La. Oct. 11, 2006); *ProBatter Sports, LLC v. Frozen Ropes New Orleans—N. Shore, LLC*, No. 2:2006cv07841-MVL-SS (E.D. La. Oct. 11, 2006).

**IT IS SO ORDERED.**

**DATED** this 3rd day of November, 2006.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA