**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| PROBATTER SPORTS, LLC,        : | |
|      Plaintiff,             : | |
|                       : | Case No.: 05-CV-2045 |
|       v.                : | |
| JOYNER TECHNOLOGIES, INC.,  : | |
|      and              : | |
| UNIVERSITY OF NORTHERN IOWA  : | |
|      Defendants.        : | |
|                       : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR RECONSIDERATION OF THE COURT'S RULING ON THE MOTION**
**TO ENJOIN PROBATTER'S RECENT SUITS AGAINST JOYNER'S CUSTOMERS**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT……………………………………………………….2

II.    LEGAL ARGUMENTS………………………………………………………………..3

     A.    ProBatter Has the Right Under the Patent Statutes,
           Based upon Its Presumptively Valid Patents, to Initiate
           The Subject Customer Suits ……………………………………….....................3

     B.    ProBatter Will Likely Be Harmed By the Stay of Prosecution
           Ordered by The Court's Ruling ……………………………….......................4

     C.    Rule 65(c) of the Federal Rules of Civil Procedure
           Makes the Posting of Security Mandatory……………………………..…….7

     D.    The Cases Relied Upon by the Court as Grounds for Not
           Ordering Compliance with the Mandatory Requirement of
           Rule 65(c) Are Not Applicable to the Present Situation
           Involving Customer Suits…………....................................................8

     E.    Amount of the Bond………………………………………………..…….13

     F.    ProBatter Should be Permitted to File Additional Claims Against Joyner's
           Customers, Subject to the Stay of Prosecution Ordered by the Court's Ruling15

III.   CONCLUSION……………………………………………………………16

# I.  PRELIMINARY STATEMENT

Plaintiff, ProBatter Sports, LLC ("ProBatter"), respectfully submits this memorandum in support of Plaintiff's Motion under Federal Rules of Civil Procedure 59(a) and 60(b) and Local Rule 7.1(e) for Reconsideration of the Court's Ruling on Defendant's Motion to Enjoin ProBatter's Recent Suits entered on November 3, 2006 and as enlarged on November 9, 2006 (collectively, the "Ruling"). Specifically, ProBatter seeks:

> (i)     reconsideration of that portion of the Ruling that held that defendant, Joyner Technologies, Inc. ("Joyner") should not be required to post a bond or provide any security to ProBatter; and
>
> (ii)    relief with respect to that portion of the Court's Ruling to the extent it precludes ProBatter from amending its complaints in any of the pending customers suits to add additional counts, e.g., to add counts for unfair competition under 43(a) of the Lanham Act.

The Court in the subject Ruling granted Defendant's Motion and enjoined ProBatter from prosecuting a number of actions commenced by ProBatter against Joyner's customers (the "Customer Suits") until the present action is resolved.  In enjoining ProBatter from prosecuting the Customer Suits, the Court refused to order that Joyner provide security to ProBatter as a condition of granting such an injunction.

This Motion for Reconsideration is being made in part because there are legal grounds and factual considerations that ProBatter respectfully submits the Court overlooked in the original Ruling refusing to order Joyner to post a bond, namely:

- ProBatter has a right under the patent statute to seek an injunction and to also recover damages from all parties that, *inter alia*, **make, use or sell** products that infringe ProBatter's patents;

- Joyner and its customers are all startup companies with minimal capitalization. Accordingly, there is a very real possibility that some, if not all, of them will be unable to satisfy judgments rendered by the Court herein or by the other courts where the Customer Suits are pending.

- Rule 65(c) of the Federal Rules of Civil Procedure mandates the posting of security by a party seeking an injunction of the type sought herein; and

- The cases cited by the Court in reaching its Ruling on the bond issue do not support its position that an exception to the mandatory requirement of a bond is appropriate in the present case.

This Motion for Reconsideration is also being made in part because there are legal grounds and factual circumstances that justify ProBatter amending its complaints in certain of the Customer Suits to assert additional claims against the customers, such as unfair competition under Section 43(a) of the Lanham Act. Such claims cannot be presented, however, in view of the Court's Ruling staying further prosecution of the Customer Suits.

## II.    LEGAL ARGUMENTS

### A.    ProBatter Has the Right Under the Patent Statutes, Based Upon Its Presumptively Valid Patents, to Initiate The Subject Customer Suits

A patent owner has a statutory right to enforce its patents against anyone who makes, uses or sells a product that is covered by the claims of its patents. *See* 35 U.S.C. §271. As such, it is indisputable that ProBatter had the right to initiate not only the present action against Joyner,

3

based on Joyner's **manufacture** and **sale** of infringing products, but also the Customer Suits which ProBatter has filed against Joyner's customers, who **use** the infringing Joyner products. *Id.*

Significantly, in all such legal actions, ProBatter's patents "shall be presumed valid." 35 U.S.C. §282. As such, Joyner and its customers have the heavy burden of establishing that ProBatter's patents are invalid and unenforceable. *Id.*

B.    **ProBatter Will Likely Be Harmed By the Stay of Prosecution Of the Customer Suits Ordered by the Court's Ruling**

By its own admission, Joyner is a small, family-owned business that is only beginning its second year of operation. *See* (Joyner Technologies Inc.'s Brief in Support of Motion to Enjoin ProBatter's Recent Suits Against Joyner's Customers, pg. 3). Following this admission, ProBatter has obtained a copy of a Dun & Bradstreet report for Joyner which confirms such fact and indicates that Joyner's resources are the revenues its business operations generate are very limited. A copy of such Dun & Bradstreet Report on Joyner is attached as Exhibit A to the Declaration of Susan M. Schlesinger in Support of Plaintiff's Motion for Reconsideration of the Court's Ruling on the Motion to Enjoin ProBatter's Recent Suits Against Joyner's Customers ("Schlesinger Dec."). Thus, there simply is no way that Joyner is likely to be able to satisfy any judgment that might be entered against it, let alone satisfy its claimed indemnity obligation to its customers.

Accordingly, one of the reasons why ProBatter elected to commence the Customer Suits was because of the very real concern that, should ProBatter prevail in this action, and thereafter in the actions against Joyner's customers, Joyner will be unable to satisfy all such judgments. That fear has now been confirmed by Joyner's own admission and by the D&B Report.

Another reason why ProBatter elected to commence the Customer Suits was because the patent statute allows for patent owners to file infringement suits against those who **use** infringing products. This means that ProBatter will have additional recourse against Joyner's customers for compensation resulting from such infringement by "**use**," i.e., above and beyond the compensation that will be due ProBatter from Joyner's infringing "**manufacture**" and "**sale**" conduct.

Each of Joyner's customers has a facility wherein one or more of Joyner's infringing machines are being used repeatedly by persons who pay to use such infringing machines.[1] To the extent that Joyner's customers receive the aforementioned payments from persons using the infringing machines, ProBatter is entitled to a royalty thereon.

Significantly, recovery of such royalty from Joyner's customers at the point in time down the road when the Customer Suits are permitted to be prosecuted is speculative at best. More specifically, after issuance of the Court's Ruling, ProBatter began to research Joyner's customers in more depth. It has now become abundantly clear that most, if not all, of Joyner's customers are startup companies similar to Joyner. ProBatter was only able to obtain Dun & Bradstreet reports for two of the customers. The others are not even listed with Dun & Bradstreet because they have not been in business long enough to so qualify. *See* (Schlesinger Dec., Exhibit B).

ProBatter's experience with new batting cages mirrors what was disclosed by the aforementioned research on Joyner's customers. They experience the same high failure rate of any new business, perhaps even a greater failure rate because of the nature of the business and the relatively tight margins that most batting cage operators work under. ProBatter obtained a copy of an Industry Financial Analysis Profile for batting cages in general, and it confirmed

---

[1] ProBatter notes that in the facility in South Carolina, there are two of Joyner's machines in use. In one of the facilities in Louisiana, three of Joyner's machines are in use.

ProBatter's experience. The Profile reflected that batting cage facilities are typically thinly capitalized with relatively small margins. In addition, the Profile confirmed that the success rate of batting cages is no better than that of any new business. *See* (Schlesinger Dec., Exhibit C).

A still further reason ProBatter decided to proceed against Joyner's customers is due to the continued harm ProBatter suffers each time one of the persons visiting one of Joyner's customer's facilities uses Joyner's infringing product. To the extent that such persons have a negative experience as a result of the inferior quality of Joyner's machines, such negative experience will tarnish the marketplace perception of ProBatter's patented machine. This is particularly so in view of the fact that it has come to the attention of ProBatter that several (possibly all) of such customers are claiming that the infringing Joyner machine at their facility is the "only" or "best" machine of its kind. *See*, e.g., http://www.dryeagersbaseball.com.

Based upon all of the foregoing information, ProBatter has come to the following inescapable conclusions:

 a. there is a significant probability that Joyner will not be in a position to satisfy any judgment that the Court might award herein;

 b. there is an even greater probability that, if ProBatter is required to wait to prosecute actions against Joyner's customers until a final resolution of the present action (which could take years if appeals are involved), a number of those new startup batting cage operations will no longer even be in business, and ProBatter will be left with a right without a remedy;

 c. there is ongoing damage being done to ProBatter in the marketplace by the presence of Joyner's inferior machines; and

d.  there is a real danger that the many years of effort ProBatter has expended in introducing its proprietary machines to the marketplace and getting the marketplace to adopt and employ ProBatter's proprietary machines will be destroyed by the mistaken perception that ProBatter's machines, like Joyner's machines, are unreliable.

Accordingly, ProBatter elected to simultaneously prosecute the Customer Suits and to seek injunctive relief and an award of damages and attorneys' fees against Joyner's customers.

The Court's Ruling certainly is justified through judicial economy. At the same time, however, it has the very real possibility of causing ProBatter significant harm. After the expenditure of considerable sums to obtain and enforce its valid patent rights, at the end of the day, there may not be any entity left in a position to satisfy any judgment that the Court herein or the courts in the Customer Suits might enter. That is the reason why ProBatter initially requested that Joyner be required to post a bond or other security at this stage of the proceeding and why ProBatter is now asking the Court to revisit its Ruling on not requiring a bond from Joyner, i.e., lest this entire matter becomes an exercise in futility for ProBatter.

C.  **Rule 65(c) of the Federal Rules of Civil Procedure Makes the Posting of Security Mandatory**

Rule 65(c) of the Federal Rules of Civil Procedure states:

(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer of agency thereof.

The plain language of this provision is clear. The issuance of a restraining order or preliminary injunction mandates the posting of some form of security by the applicant. In fact, preliminary injunctions have been dissolved where there has been no finding of irreparable harm or injury to the party and where no security has been required. *See Telex Corp. v. International Business Machines Corp.*, 464 F.2d 1025 (8th Cir. 1972).

**D.**    **The Cases Relied Upon by the Court as Grounds for Not Ordering Compliance with the Mandatory Requirement of Rule 65(c) Are Not Applicable to the Present Situation Involving Customer Suits**

In its Ruling, the Court has cited a number of cases for the apparent proposition that the mandatory language of Rule 65(c) was not as "mandatory" as the Rule might otherwise seem to indicate, i.e., that security is not required if the injunction was designed "'to aid and preserve the court's jurisdiction over the subject matter involved.'" (Court's November 3, 2006 Ruling, pg. 14 (quoting *Magidson v. Duggan*, 180 F.2d 473, 479 (8th Cir. 1950)). The Court thus concluded that since the antisuit injunction is "designed to aid and preserve the court's jurisdiction over the various claims involving the '134 Patent and the '512 Patent, no bond is required." (Court's November 3, 2006 Ruling, pg. 15).

ProBatter respectfully submits that the Court's reliance on the cases cited by the Court is misplaced and inconsistent with the plain language of Rule 65(c) and the prevailing law in the area.

The facts of the cases relied on by the Court in reaching its Ruling are clearly not in point. The principal case relied on by the Court in its ruling that no security is required if the injunction was designed to aid and preserve the court's jurisdiction over the subject matter involved, was *Magidson v. Duggan*, 180 F.2d 473 (8th Cir. 1950), which involved an appeal from a Bankruptcy Court decision staying a pending state court proceeding involving the estate debtor

and that granted leave to the estate trustee to file a dependent action in district court to recover assets due to the bankrupt estate. Clearly, in *Magidson,* the subject matter was the same, the parties were the same and the transaction involved occurred in the same state. The only difference was between state and federal court.

In contrast, the Customer Suits involve different defendants in different jurisdictions and, in certain instances, different acts of infringement. While the Court herein has jurisdiction over the sale of the Joyner machines by Joyner to the University of Northern Iowa, it is questionable as to whether the Court has subject matter jurisdiction over the acts of infringement committed by Joyner, which is a Georgia corporation, in selling infringing products to a variety of facilities in jurisdictions such as New York, Louisiana and Washington. Clearly, there also is an issue of whether the Court has personal jurisdiction over the individual batting cages.

As such, ProBatter submits that the Court's reliance on the *Magidson* decision as the basis for disregarding the otherwise mandatory application of the security requirement of Rule 65(c) of the Federal Rules of Civil Procedure is misplaced.

The additional cases relied upon by the Court are likewise factually inapposite. None of the cases involve the grant of an injunction prohibiting the prosecution of patent infringement suits against a defendant's customers. In almost all instances, the cases involve the same parties, frequently in the same states, and over the same transactions. This is in stark contrast with the present case which involves different parties in different states involving different acts of infringement.

Moreover, in a number of the decisions cited in the Court's Ruling, the courts decided to actually order the posting of bonds. For example, the decision in *Ferguson v. Tabah*, 288 F.2d 665 (2nd Cir. 1961) involved an application to a federal court to stay proceedings in a similar

state court action involving the transfer of stock certificates. Ironically, in *Ferguson*, the District Court had, in fact, required the posting of a bond and determined that the security was adequate.

*Zenith Radio Corp. v. United States*, 518 F. Supp. 1347 (C.I.T. 1981), involved an action challenging a settlement of certain government claims for antidumping duties arising from the entry of Japanese television sets into the U.S. In that case, the Court <u>granted</u> the request by the U.S. that the manufacturer be required to post security to indemnify the U.S. should it be ultimately determined that the U.S. was wrongfully enjoined or restrained by the court's preliminary injunction.

In *United Fruit Company v. Standard Fruit and Steamship Company*, 282 F. Supp. 338 (D. Mass. 1968), the court enjoined a subsequently filed action for unfair competition in another jurisdiction involving the same parties, finding that defendant's action in the other jurisdiction was actually a compulsory counterclaim. The parties were the same and the action arose out of the same transaction. While the court mentioned in passing that no security was required, that presumably could have been because none was requested or, moreover, because the court concluded that it was properly a compulsory counterclaim.

The decision in *Bivins v. Board of Public Education & Orphanage*, 284 F. Supp. 888 (M.D. Ga. 1967) involved the granting of a preliminary injunction halting the construction of a proposed school. The court declined to order the posting of a bond, stating that one is not required where the injunction was issued by the court "to protect and enforce its lawful orders" or "to preserve trial court's jurisdiction over the subject matter involved." Neither is applicable in the present case. There is no lawful order of the Court herein to preserve, and while the Court may have jurisdiction over Joyner and the patents in suit as to Joyner, the Court lacks jurisdiction

over the defendant customers in the Customer Suits as well as their own independent acts of infringement, all of which occurred outside the jurisdiction of the Court.

The decision in *Kaepa, Inc. v. Achilles Corporation*, 76 F.3d 624 (9th Cir. 1996) involved an injunction sought to enjoin the defendant from prosecuting an action that it had filed in Japan involving the same parties that, according to the court mirrored the breach of contract and fraud action filed against the defendant. The court found that no bond was necessary. However, the court noted that the party being enjoined was "the party that created any risk of damage for delay or duplication by its filing the second, mirror-image suit in Japan after having contractually consented to the jurisdiction of Texas." *Id.* at 628. Here, while ProBatter has consented to the jurisdiction of the Court by having filed this patent infringement action in Iowa, ProBatter has not consented to the Court's jurisdiction over the Customer Suits, nor have the individual defendants in the Customer Suits consented to the jurisdiction of the Court.

*G.C. & K.B. Invs., Inc., v. Wilson*, 326 F.3d 1096 n. 8 (9th Cir. 2003) was cited by the Court for the proposition that an "antisuit injunction was a permanent injunction and was thus beyond the purview of Rule 65(c)" because it "is neither a 'restraining order' or a 'preliminary injunction.'" (Court's November 3, 2006 Ruling, pg. 15, footnote 11). While that may be true, the issue at bar does not involve a permanent injunction arising from the confirmation of an arbitration award. Further, an antisuit injunction may not be considered a permanent injunction inasmuch as in the instant case, ProBatter will be able to continue its suits once the infringement action in the Court is concluded and infringement is found. Of course, this then reaches the heart of ProBatter's concern, i.e., that it will prevail in Iowa and then go to uphold its rights against Joyner's customers - only to find that Joyner's customers have since gone out of business

and are no longer able to answer for the harms that they incurred to ProBatter during the pendency of the stay.

In actual fact, the decision that is most similar to the facts of the present situation, to wit, the only decision that involves a patent owner commencing suits against customers of an infringer that was cited by the Court was the Second Circuit decision in *Bechick Products, Inc. v. Flexible Products, Inc.*, 225 F.2d 603 (2nd Cir. 1955), which reached a contrary conclusion to the cases cited and relied on by the Court. In *Bechick Products,* the Second Circuit held that the grant of an injunction MUST be conditioned upon the posting of a bond, particularly where the alleged infringer may not be in a position to satisfy a judgment. To this effect, the Second Circuit stated:

> Moreover, any damages which the plaintiff would thus be precluded from recovering from other contributor infringers in future actions are recoverable from the defendant manufacturer in this action; provided, at least, that the defendant shall be financially able to pay any award which may ultimately enter against it. Certainly, the plaintiff could not succeed, even if it brought two actions, in recovering the same damages twice. However, we think that the court should not, by a stay in the institution of suits against defendant's customers, put damages for which the defendant is liable beyond the reach of recovery from the customers, without assurance that the defendant will be financially able to discharge its liabilities therefore.

> We hold, therefore, that the injunction restraining the institution of suits against other contributors to Flexible's infringement may issue only on condition that Flexible furnish a bond conditioned on its payment to the plaintiff of any pecuniary award which may be made in this case. That issuance of the injunction so conditioned is within the discretion of the court, we have no doubt. *Hecht Co. v. Bowles* 321 U.S. 321, 329-330, 64 S. Ct. 587, 88 L.Ed 754. (225 F.2d. at 607);

*See also American Chemical Paint Co. v. Thompson Chemical Corp.*, 244 F.2d 64 (9th Cir. 1957), (discussing that the Ninth Circuit reversed the grant of an injunction against the filing of subsequent actions for patent infringement against customers in different districts. Of particular note is the passing reference by the court to the mandatory requirement of security in such instance which was omitted by the District Court).

Accordingly, and in view of the foregoing, ProBatter respectfully submits that the Court should grant the subject Motion for Reconsideration of this Court's Ruling of November 3, 2006 as enlarged on November 9, 2006 and require that Joyner post an appropriate bond for the Customers Suits initiated by ProBatter and subsequently stayed by the Court.

## E.    **Amount of the Bond**

The Customer Suits involve the sale and installation of at least 10 ALL STAR 5000 units at an average selling price of approximately $25,000 per machine or, approximately $250,000. For a patent infringement suit, a reasonable royalty based on sales of an infringing device is a proper measure of damages. 35 U.S.C. §285; *See also, Georgia Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). In addition, a reasonable royalty rate has been used by courts before for determination of an appropriate bond in a patent infringement matter. *See, e.g. Gordon Johnson Co. v. Hunt et al.*, 109 F. Supp. 571 (N.D. Ohio 1952). (taking into consideration the amount of sales of alleged infringing devices and applying an average royalty). The calculation by the court has also included a consideration of attorneys' fees and costs. *Id.*

Applying these principles to the instant action, at a royalty rate of 10%, Joyner would be liable to ProBatter for at least $25,000 in damages.[2] Since Joyner was aware of the existence of the ProBatter patents and, in fact, the allegation of infringement being made by ProBatter as of the date of these sales, this would qualify as willful and wanton infringement which should result in a trebling of the damage award, i.e., the award would be $75,000. *See* 35 U.S.C. §284. In addition, there is the potential for an award of attorneys' fees. *See* 35 U.S.C. §285. Under the

---

[2] *See* Michael D. McCoy, Andrew T. Meunier, and Kirk T. Bradley, *Royalty Rate Trends and Valuation in Patent and Technology Licensing*, 2003 Licensing Update 360, 376-77 (2003) (explaining that an average royalty rate for damages in patent cases is approximately 10%.

AIPLA survey, the average legal fees for an action of this type is in excess of $500,000 and total legal fees for this action and all of the Customer Suits is likely to be in excess of $5,000,000. *See* (Schlesinger Dec.¶6, Exhibit D).

Thus, ProBatter would be justified in asking for a bond of in excess of $1 million. However, ProBatter respectfully requests that the Court merely mandate a bond of $75,000.


F.    **ProBatter Should be Permitted to File Additional Claims Against Joyner's Customers, Subject to the Stay of Prosecution Ordered by the Court's Ruling**

Since the filing of the Customer Suits, it has come to the attention of ProBatter that some customers who are the defendants in such actions are engaged in making false and disparaging statements about ProBatter.  Investigation of conduct of Joyner's customers is ongoing.

ProBatter respectfully submits that it should be permitted to amend its complaints to assert claims against those customers for unfair competition under Section 43(a) of the Lanham Act.

Because of this Court's Ruling, however, ProBatter is precluded from amending its complaints to include such 43(a) claims (or any other claims for that matter that may arise as a result of the customers' actions).

Accordingly, ProBatter is rendered powerless to do anything about those false and disparaging statements (or any other improper actions Joyner's customers may take).

In fact, inaction by ProBatter in the face of such false and disparaging statements - because of the existence of the stay of prosecution ordered by the Court's Ruling - is likely to cause such customers and others to believe that they can violate the rights of ProBatter with impunity.

ProBatter therefore seeks modification of the Court's Ruling to permit ProBatter to amend its complaints to add additional counts in connection with such false and disparaging statements, or in connection with any other conduct which the customers may undertake which ProBatter believes is in violation of its rights. While it is understood that ProBatter will be enjoined from prosecuting those additional claims, such customers will at least be put on notice that they will ultimately be held accountable if they violate the rights of ProBatter, whether during the existence of the stay of prosecution ordered by the Court's Ruling or otherwise.

## III.  **CONCLUSION**

Based upon the foregoing reasons and arguments, ProBatter respectfully requests that the Court reconsider its Ruling and (i) require Joyner to post a bond sufficient to cover the likely irreparable harm which will be caused to ProBatter by Joyner's customers; and (ii) provide that ProBatter is permitted to amend its pleadings as it deems necessary to assert (but not prosecute without further leave of the Court) additional claims against Joyner's customers during the pendency of the stay of prosecution.

Dated: November 20, 2006

Respectfully submitted,

Susan M. Schlesinger
GRIMES & BATTERSBY, LLP
488 Main Avenue
Norwalk, CT  06851
Telephone: (203) 849-8300
Facsimile:  (203) 849-9300
E-Mail: schlesinger@gandb.com

Stephen J. Holtman
SIMMONS, PERRINE, ALBRIGHT
& ELWOOD, P.L.C.
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Telephone: (319) 366-7641
Facsimile: (319) 366-1917
E-Mail: sholtman@simmonsperrine.com

*Attorneys for Plaintiff*
*ProBatter Sports, LLC*

15

*Of Counsel:*

GRIMES & BATTERSBY, LLP
Edmund J. Ferdinand, III, Esq.
James G. Coplit, Esq.
Russell D. Dize, Esq.
488 Main Avenue
Norwalk, CT  06851-1008
Telephone: (203) 849-8300
Facsimile:  (203) 849-9300


HISCOCK & BARCLAY, LLP
Thomas R FitzGerald, Esq.
2000 HSBC Plaza
100 Chestnut Street
Rochester, NY 14604

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 20, 2006, the foregoing Memorandum of Law in Support of the Motion for Reconsideration of the Court's Ruling on the Motion to Enjoin ProBatter's Recent Suits Against Joyner's Customers was electronically filed with the Clerk of Court using the CM/ECF system with notice of such filing sent to the following:

| | |
|---|---|
| James S. Zmuda, Esq. | John C. McNett, Esq. |
| Arthur E. Eggers, Esq. | Quentin G. Cantrell, Esq. |
| CALIFF & HARPER, P.C. | WOODARD EMHARDT |
| 506 15th Street, Suite 600 | MORIARTY MCNETT & |
| Moline, Illinois 61265 | HENRY LLP |
| Telephone: 309-764-8361 | 111 Monument Circle, Suite 3700 |
| Facsimile: 309-764-8394 | Indianapolis, Indiana 46204-5137 |
| jzmuda@califf.com | Telephone: 317-634-3456 |
| aeggers@califf.com | Facsimile: 317-637-7561 |
| Attorneys for Defendant | jcantrell@uspatent.com |
| Joyner Technologies, Inc. | jmcnett@uspatent.com |

Susan M. Schlesinger